ANN CRAWFORD McCLURE, Chief Justice *280 This appeal is from a judgment terminating the parental rights of S.M. and of M.N.P. to their children, K.-A.-B.M. and F.E.B.M. We affirm.
FACTUAL SUMMARY
S.M. (Father) and M.N.P. (Mother) are the parents of six-year-old K.-A.B.M. and four-year-old F.E.B.M.[1] The Texas Department of Family and Protective Services (the Department) became involved with the family in El Paso on April 22, 2016 when it received a report that Mother had choked KM because he was running late for school. Father was residing in Colorado when this incident took place. Mother admitted that she had been using drugs while the primary caregiver of the children. The Department referred Mother to Family Based Safety Services and (FBSS) and she completed parenting classes and inpatient drug treatment. During Mother's inpatient treatment and for one or two weeks after her release, the children were placed in a Parental Child Safety Placement (PCSP). The FBSS caseworker, Gabriel Virgen, testified that upon Mother's release from inpatient drug treatment, she was motivated to get a job and was "going in the right direction." Approximately one week after Mother completed inpatient drug treatment, Father moved to El Paso and began living with Mother. Mother completed only one week of outpatient services. During one of Virgen's visits to the home, Father admitted that he smoked marihuana. Consequently, Virgen attempted to provide services for Father, including outpatient drug treatment, but Father attended for only two days. The Department also learned that Mother had obtained a protective order against Father on December 16, 2014 based on a finding that family violence had occurred and was likely to occur in the future. The order, which prohibited Father from committing acts of family violence, communicating with Mother, or going within 200 yards of Mother's residence, did not expire until December 15, 2016. The Department advised Mother that Father could not live with the family due to his lack of participation in services and past commission of domestic violence. Despite this admonishment and the existence of the protective order, Mother and the children left El Paso with Father for a trip to Fort Worth on October 20, 2016. State troopers stopped the vehicle in Howard County and found 102 pounds of marihuana in the vehicle. Both Mother and Father were arrested and subsequently indicted for possession of marihuana. Father was also arrested for violation of the protective order. The children were placed in foster care and the Department filed a petition in Howard County seeking termination of Mother's and Father's parental rights. Following a hearing, the Department was named the temporary managing conservator on November 2, 2016, and the case was transferred from Howard County to El Paso County on November 9, 2016.
The Howard County District Attorney's Office dismissed the possession of marihuana cases against Mother and Father on February 17, 2017 due to a lack of probable cause. When Mother was released from jail and returned to El Paso, she admitted to Virgen that she had been transporting drugs and the children were present in the car. Mother said that someone she met *281 during inpatient drug treatment offered her $3,000 to transport the drugs. Mother also admitted she had used crack cocaine. Virgen asked Mother to continue her outpatient drug treatment, but she attended for only one week.
The caseworker, Perla Pena, met with Mother at the beginning of December 2016 and explained how the case would progress. Pena advised Mother that she could no longer engage in criminal activity and she had to attend visitations with the children. Pena first met with Father in April 2017. She explained to him that in order to be reunited with his children, he needed to attend visitations with his children and no longer engage in family violence. During this conversation, Father repeatedly asked Pena what he needed to do to get his children back.
Pena met with both Mother and Father on June 27, 2017 to review the Family Service Plan. Although they refused to sign the service plans, Pena provided each of them with a copy of the plan. Pena explained that both parents were difficult to engage throughout the case. Father was frequently verbally aggressive and would yell at her while complaining that he should not be asked to participate in any services. Mother was also uncooperative and dishonest.
The Family Service Plan required Mother to: (1) attend supervised visitations with the children; (2) participate in individual counseling; (3) obtain and maintain employment; (4) submit to random drug testing; (5) participate and complete domestic violence classes; (6) complete an assessment by a psychiatrist and follow recommendations; and (7) participate in a drug/alcohol assessment and follow recommendations.
Mother did not comply with any of these requirements. Mother attended only 33 of the 97 scheduled visits with the children. The Department provided Mother and Father with bus tokens so they could attend visitations, but they used the tokens for things other than visiting the children. Regarding the other requirements, Mother often made an initial effort to comply, but failed to follow through. For example, Mother attended one session with a therapist and did not return. She also completed a psychiatric assessment and was diagnosed with major depressive disorder, but she did not attend therapy. Likewise, Mother participated in a drug and alcohol assessment, but she was unsuccessfully discharged from the recommended outpatient treatment because she failed to attend any group or individual sessions. Regarding the domestic violence classes, Mother attended the orientation and completed the intake, but she completed only six of twelve classes. Mother did not make an effort to obtain employment. After rejecting Pena's offer of assistance in locating employment, Mother did not find a job on her own. She also refused to submit to drug tests on three different occasions. Under the Service Plan, a refusal to submit to a test constituted a positive drug test. Mother also admitted to using crack cocaine and marihuana in December 2016.
The Family Service Plan required Father to (1) participate in therapy and follow all recommendations; (2) submit to random drug testing; (3) submit to an assessment by a psychiatrist, follow all recommendations, and provide a release of information so the Department could verify compliance; (4) provide the Department with all of his service provider information; (5) participate in a drug/alcohol assessment through OSAR and follow all recommendations; and (6) attend supervised visitation with the children. Father attended only 3 of 54 scheduled visitations with the children and he did not submit to any drug tests. Father claimed he was only given *282 one bus token, and he also told Pena that he did not need to see his children for more than just one hour per week. During one visit with the children in June 2017, Father became verbally aggressive and abusive with both the children and Mother. During this twenty minute outburst, the children appeared to be afraid of Father and hid behind Mother. The representative of Associated Behavioral and Trauma Specialists who made the written report about the incident stated that Father was at times incoherent, but he complained about the current foster family, CPS, the court system, and KM's clothing.
The Department referred Father to individual therapy, in part to address domestic violence, but he attended only one appointment. Arturo Acosta, a clinical social worker, met with Father to do the intake for counseling, but Father refused services and "ranted" while complaining that CPS was out to get him. Acosta explained that he talked to Father for about an hour and a half in an effort to calm him down and perform the interview, but Father was extremely angry and would not stop talking. Father told Acosta that he had been diagnosed with schizoaffective disorder, but he was not taking the prescribed medications because he did not like the side effects. Acosta recommended that Father return to his psychiatrist and resume taking his medications to enable him to participate in counseling. Father was unsuccessfully discharged from mental health treatment at University Behavioral Health (UBH).
The evidence also showed that while the case was pending, Mother and Father committed criminal offenses, including acts of domestic violence against each other. On May 24, 2017, Mother was arrested for shoplifting from Wal-Mart. Father was arrested in August 2017 for theft of a pack of beer from a convenience store. An El Paso police officer, Jonathan Longenbaum, testified that he and other officers at the Northeast police station were familiar with Mother and Father because they were frequently dispatched on domestic violence calls involving the couple. On March 15, 2017, Longenbaum was dispatched on a domestic violence call, and Father was charged with assault causing bodily injury to Mother. The charging instrument alleged that Father struck Mother's face and body with his hand. Another EPPD officer, Michael J. Williams, was dispatched to two family disturbances involving Mother and Father at the SuperLodge Motel. He did not make an arrest in either incident because Mother and Father were only engaged in verbal disagreements and they agreed to separate for the night. On September 5, 2017, El Paso police officers were again dispatched to the SuperLodge Motel on a family violence call involving Mother and Father. Officers arrested Mother for causing bodily injury to Father by striking him with a high heel shoe. They also found a methamphetamine pipe in Mother's purse and she admitted using methamphetamine earlier that day. At trial, Father testified that his last contact with law enforcement was the day prior to the hearing because Mother kicked in the door of his motel room because he would not give her money.
Following the hearing, the trial court entered judgment terminating Mother's and Father's parental rights based on findings that each of them (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, pursuant to § 161.001(b)(l)(D); (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.001(b)(1)(E), and (3) failed to comply with the provisions of a court order that *283 specifically established the actions necessary for Mother and Father to obtain the return of the children, pursuant to § 161.001(b)(1)(O). The trial court also found that termination of Mother's and Father's parental rights is in the best interest of the children. Each parent filed notice of appeal.
ISSUES RAISED ON APPEAL
Mother and Father filed separate briefs. Mother raises five issues, four of which involve legal and factual sufficiency challenges to the predicate termination grounds and best interest determination. Father's brief presents five issues addressing the legal and factual sufficiency of the evidence supporting the predicate termination grounds and best interest. For convenience and to avoid unnecessary repetition of applicable law and standards of review, the opinion will group the sufficiency issues common to each brief. We begin by addressing an issue unique to Mother.
MOTION FOR CONTINUANCE
In her first issue, Mother contends that the trial court erred by denying her oral request for continuance made at the final hearing because Mother was not present. Mother asserts that the denial of the motion for continuance violated her right to due process because she did not have notice of the hearing. The final hearing began on October 2, 2017, and both Mother and Father were present. The parties did not finish with the presentation of evidence and the court continued the case until October 19, 2017. For reasons not reflected in the record, the trial court re-set the case for October 30, 2017. Counsel for the Department stated that the October 30 hearing date had been calendared for at least a week and possibly longer. Mother attached to her brief a copy of the trial court's order issued on October 16, 2017 which re-set the final hearing for October 30, 2017. Mother's counsel never asserted in the trial court that Mother did not have notice of the hearing.
The legal basis for Mother's notice argument is unclear because she cites no authority other than a general reference to due process. In suits affecting the parent-child relationship, including termination proceedings, procedures for contested hearings "shall be as in civil cases generally." TEX.FAM.CODE ANN. § 105.003 (West 2014). Under Rule 245, the parties must be given notice of not less than forty-five days of a first setting for trial. TEX.R.CIV.P. 245 ; see Osborn v. Osborn , 961 S.W.2d 408, 411 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). The court may, however, reset the case to a later date on any reasonable notice. See In re R.M.R. , No. 04-09-00253-CV, 2009 WL 4668899, at *3 (Tex.App.-San Antonio Dec. 9, 2009, pet. denied) ; Osborn , 961 S.W.2d at 411. Rule 245 's notice requirements are satisfied by serving the party's attorney under the provisions of TEX.R.CIV.P. 21a. Osborn , 961 S.W.2d at 411. Mother has not shown that her counsel, who attended the final hearing, did not have reasonable notice of the final hearing re-set for October 30.
A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. See Villegas v. Carter , 711 S.W.2d 624, 626 (Tex. 1986) ; Wilborn v. GE Marquette Medical Systems, Inc. , 163 S.W.3d 264, 267 (Tex.App.-El Paso 2005, pet. denied). Rule 251 provides that no continuance shall be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX.R.CIV.P. 251. Generally, when a movant fails to comply with these requirements, we presume the trial court did not abuse its discretion in denying the motion. Wilborn , 163 S.W.3d at 267. Mother's oral motion for continuance was not *284 supported by affidavit. Further, the record affirmatively reflects that the Department objected to Mother's request for the continuance. Finally, Mother has not shown that the continuance was required by operation of law. Finding no abuse of discretion, we overrule Mother's first issue.
PREDICATE TERMINATION GROUNDS
Both Mother and Father challenge the legal and factual sufficiency of the evidence supporting the predication termination grounds. Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. See TEX.FAM.CODE ANN. § 161.001 (West Supp. 2017). Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. See id. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. Texas Department of Human Services v. Boyd , 727 S.W.2d 531, 533 (Tex. 1987) ; In the Interest of A.B.B. , 482 S.W.3d 135, 138 (Tex.App.-El Paso 2015, pet. dism'd. w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. In re A.V. , 113 S.W.3d 355, 362 (Tex. 2003).
Standards of Review
When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005), quoting In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002) ; see In re J.O.A., 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. In re J.P.B. , 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. In re J.P.B. , 180 S.W.3d at 573 ; In re J.F.C. , 96 S.W.3d at 266.
In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. See In re J.F.C. , 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. In re J.F.C. , 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. Id. If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. Id.
Sections 161.001(b)(1)(E) -Mother
In Issues Two, Three, and Four, Mother challenges the legal and factual sufficiency of the evidence supporting termination under Section 161.001(1)(D), (E), and (O). We will restrict our analysis to Issue Three which pertains to the trial court's finding that Mother engaged in conduct or knowingly placed the children *285 with persons who engaged in conduct which endangered the physical or emotional well-being of the children. See TEX.FAM.CODE ANN. § 161.001(b)(1)(E).
In this context, "endanger" means to expose to loss or injury or to jeopardize a child's emotional or physical health. Doyle v. Texas Department of Protective & Regulatory Services , 16 S.W.3d 390, 394 (Tex.App.-El Paso 2000, pet. denied), citing Texas Department of Human Services v. Boyd , 727 S.W.2d 531, 533 (Tex. 1987) ; J.S. v. Texas Department of Family and Protective Services , 511 S.W.3d 145, 159 (Tex.App.-El Paso 2014, no pet.). The term "conduct," as used in Section 161.001(b)(1)(E), includes the parent's actions and omissions. In re M.J.M.L. , 31 S.W.3d 347, 351 (Tex.App.-San Antonio 2000, pet. denied).
Under Subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. See In re J.T.G. , 121 S.W.3d 117, 125 (Tex.App.-Fort Worth 2003, no pet.). Termination under this subsection must be based on more than a single act or omission. Id. The statute requires a voluntary, deliberate, and conscious course of conduct by the parent. Id. When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born. See In re J.O.A. , 283 S.W.3d 336, 345 (Tex. 2009).
The commission of criminal conduct by a parent may support termination under Section 161.001(b)(1)(E) because it exposes the child to the possibility that the parent may be imprisoned. In re R.A.G. , 545 S.W.3d 645, 650-52, 2017 WL 105131, at *3 (Tex.App.-El Paso January 11, 2017, no pet.) ; In re M.C. , 482 S.W.3d 675, 685 (Tex.App.-Texarkana 2016, pet. denied) ; In re A.W.T. , 61 S.W.3d 87, 89 (Tex.App.-Amarillo 2001, no pet.). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. See In re M.R.J.M. , 280 S.W.3d 494, 503 (Tex.App.-Fort Worth 2009, no pet.). Mother and Father were arrested in Howard County and indicted for possession of 102 pounds of marihuana, a second degree felony. See TEX.HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5) (West 2017). This offense is punishable by imprisonment for two to twenty years and a $10,000 fine. TEX.PENAL CODE ANN. § 12.33 (West 2011). Mother told the caseworker that someone she met during inpatient drug treatment offered her $3,000 to transport the marihuana. Even though the possession case was subsequently dismissed, the commission of this offense nevertheless exposed the children to the possibility that both parents could be imprisoned for a lengthy term. After the commission of the possession offense and while the termination case was pending, Mother was charged with two theft offenses. On April 6, 2017, she was charged with theft of more than $2,500 but less than $30,000 from the Housing Authority of the City of El Paso alleged to have been committed as part of a continuing course of conduct between October 30, 2016 and March 1, 2017. This theft offense is a state jail felony punishable by confinement for 180 days to two years. See TEX.PENAL CODE ANN. § 12.35(a) (West 2011); TEX.PENAL CODE ANN. § 31.03(e)(4) (West Supp. 2017). Mother was also arrested for shoplifting property with a value of more than $100 but less than $750 from Wal-Mart on May 24, 2017. This theft offense is a class B misdemeanor punishable by confinement in jail for up *286 to 180 days. See TEX.PENAL CODE ANN. § 12.22 ; TEX.PENAL CODE ANN . § 31.03(e)(2).
Evidence of domestic violence may be considered as evidence of endangerment under Subsection (E). See In re M.R. , 243 S.W.3d 807, 819 (Tex.App.-Fort Worth 2007, no pet.). Mother obtained a protective order against Father in 2014, but she resumed associating and living with him in 2016 even after the Department became involved with the family and Mother knew there was a potential for the children to be removed from the home. Both Mother and Father engaged in verbal and physical altercations requiring police intervention so frequently that several of the police officers working at the Northeast substation became familiar with them. In March 2017, Father was charged with assault after striking Mother's face and body with his hand. Father was not always the aggressor in these altercations. Mother assaulted Father with a high heel shoe on September 5, 2017, just one month before the final hearing which began on October 2, 2017. A parent's use of drugs and its effect on his or her ability to parent may qualify as an endangering course of conduct. In re J.O.A. , 283 S.W.3d at 346 ; see In re A.B. , 125 S.W.3d 769, 777 (Tex.App.-Texarkana 2003, pet. denied). Mother admitted to a caseworker at the inception of this case that she used drugs while the primary caregiver of the children. Later, while the case was pending, she told caseworkers that she had used crack cocaine and methamphetamine. A police officer found a methamphetamine pipe in Mother's purse when she was arrested for assaulting Father on September 5, 2017, one month before the final hearing. Mother failed to participate in outpatient drug therapy as required by the Service Plan and she also refused to submit to a drug test on three different occasions knowing that such refusal would be considered a positive drug test.
Having reviewed the evidence in the appropriate light under each standard of review, we conclude that it is both legally and factually sufficient for a reasonable trier of fact to form a firm belief or conviction that Mother engaged in conduct which exposed the children to a life of uncertainty and instability and thereby endangered the physical or emotional well-being of the children. Issue Three is overruled. Because the evidence is sufficient to support this termination ground, it is unnecessary to address Mother's Issues Two and Four.
Sections 161.001(b)(1)(E) -Father
In Issues A through D, Father challenges the legal and factual sufficiency of the evidence supporting termination of his parental rights under Section 161.001(1)(D), (E), and (O). As was the case with Mother, we will restrict our analysis to Issue B which pertains to the trial court's finding that Father engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. See TEX.FAM.CODE ANN. § 161.001(b)(1)(E).
The commission of criminal conduct by a parent may support termination under Section 161.001(b)(1)(E) because it exposes the child to the possibility that the parent may be imprisoned. In re R.A.G. , 545 S.W.3d at 650-52, 2017 WL 105131, at *3. Evidence of domestic violence may also be considered as evidence of endangerment under Subsection (E). See In re M.R. , 243 S.W.3d at 819. Father committed criminal acts both before and during the pendency of the termination case. As has already been detailed, the termination case against Mother and Father began when they were arrested in Howard County for possessing 102 pounds of marihuana, a second degree *287 felony. Father was also arrested for violation of a protective order. While the possession of marihuana case was dismissed due to a lack of probable cause, the trial court could nevertheless consider Father's conduct when assessing whether he had exposed the children to a risk that he would be imprisoned. Father continued to expose the children to this risk by committing other criminal acts during the pendency of the termination case, including domestic violence. Father and Mother frequently engaged in verbal and physical altercations requiring police intervention, and in March 2017, Father was charged with assault after he injured Mother by striking her face and body with his hand. Father was also arrested in August 2017 for theft of a pack of beer from a convenience store. The Service Plan required Father to participate in therapy to address domestic violence as a perpetrator, but Father failed to complete this requirement. During one visit with the children in June 2017, Father became verbally aggressive and abusive with both the children and Mother. During this twenty minute outburst, the children appeared to be afraid of Father and hid behind Mother.
Father also admitted to a casework that he smoked marihuana. A parent's use of drugs may qualify as an endangering course of conduct. In re J.O.A. , 283 S.W.3d at 346. The service plan required Father to submit to random drug testing and participate but in a drug/alcohol assessment through OSAR, but he refused to comply with these requirements. Under the service plan, a refusal to submit to a drug test is treated as a positive drug test.
Viewing the evidence in the manner required by each standard of review, we conclude that it is both legally and factually sufficient for a reasonable trier of fact to form a firm belief or conviction that Father engaged in a course of conduct which endangered the physical or emotional well-being of the children. Father's Issue B is overruled. Having found the evidence sufficient to support this termination ground, we find it unnecessary to address Father's Issues A, C, and D.
BEST INTEREST
In Issue Five, Mother contends that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of the children. See TEX.FAM.CODE ANN. § 161.001(b)(2) (West Supp. 2017). Likewise, Father argues in Issue E that the trial court's best interest finding is not supported by legally and factually sufficient evidence.
The Holley Factors
A determination of best interest necessitates a focus on the child, not the parent. See In the Interest of B.C.S. , 479 S.W.3d 918, 927 (Tex.App.-El Paso 2015, no pet.) ; In the Interest of R.F. , 115 S.W.3d 804, 812 (Tex.App.-Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. In re B.C.S. , 479 S.W.3d at 927.
The Texas Supreme Court has enumerated certain factors which should be considered: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not *288 a proper one; and any excuse for the parent's acts or omissions. Holley v. Adams , 544 S.W.2d 367, 372 (Tex. 1976) ("the Holley factors"). The Holley factors are not exhaustive and a court may consider other factors. Id. at 372. Also, a court need not find evidence of each and every factor to terminate the parent-child relationship. In re C.H. , 89 S.W.3d 17, 27 (Tex. 2002). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. In re B.C.S. , 479 S.W.3d at 927.
The first factor is the desires of the children, six-year-old KM, and four-year-old FM. The caseworker testified that the children are bonded to Mother and they had expressed a desire to be reunited with her. There is also evidence that the children are bonded to the foster parents and all of their needs are being met. There is no evidence in the record that the children are bonded to Father or expressed any desire to return to him. This factor weighs against the best interest finding as to Mother, but is neutral with regard to Father.
The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. A child's basic needs include food, shelter, clothing, routine medical care, and a safe, stimulating, and nurturing home environment. See In re S.H. , No. 02-17-00188-CV, 2017 WL 4542859, at *13 (Tex.App.-Fort Worth October 12, 2017, no pet.). It is well established that a parent's use of illegal drugs and criminal activity may qualify as conduct that endangers a child's physical and emotional well-being. See In re J.O.A. , 283 S.W.3d 336, 345 (Tex. 2009) ; In re J.T.G. , 121 S.W.3d 117, 125-26 (Tex.App.-Fort Worth 2003, no pet.). Evidence of past misconduct or neglect can be used to measure a parent's future conduct. In re Z.M. , 456 S.W.3d 677, 689 (Tex.App.-Texarkana 2015, no pet.) ; Williams v. Williams , 150 S.W.3d 436, 451 (Tex.App.-Austin 2004, pet. denied) ; see also Ray v. Burns , 832 S.W.2d 431, 435 (Tex.App.-Waco 1992, no writ) ("Past is often prologue.").
There is evidence in the record that the children's basic physical needs were being met while they were in Mother's possession, but the source of her income is questionable. Mother and Father are unemployed, and Mother declined the caseworker's offer to help her locate employment. There is some evidence in the record that Mother has engaged in prostitution. She also admitted transporting a large quantity of marihuana for $3,000. Father testified that he is disabled and unable to work. As noted in our review of the sufficiency challenges to the endangerment finding under Section 161.001(b)(1)(E), Mother and Father engaged in criminal conduct, drug use, and domestic violence even while the case was pending and their parental rights were in jeopardy. Neither parent completed the requirements of the service plan, including those requirements aimed at addressing domestic violence and drug abuse. Based on this evidence, the trial court could have inferred that Mother and Father would continue to endanger the children in the future. These factors weigh heavily in support of the best interest finding with respect to Mother and Father.
We will consider the fourth and fifth factors together. The fourth factor is the parenting abilities of the individuals seeking custody. The fifth factor examines the programs available to assist those individuals to promote the child's best interest. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past *289 inability to meet the physical and emotional needs of the children. D.O. v. Texas Department of Human Services , 851 S.W.2d 351, 356 (Tex.App.-Austin 1993, no writ), disapproved of on other grounds by In re J.F.C., 96 S.W.3d 256 (Tex. 2002). The fact finder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future. In re S.P. , 509 S.W.3d 552, 558 (Tex.App.-El Paso 2016, no pet.). While there is evidence in the record that Mother has met the physical needs of the children in the past, there is also evidence that Father and Mother failed to visit the children consistently during the case. By failing to regularly visit the children, Mother and Father neglected the children's emotional needs. Mother and Father failed to complete drug treatment or any other requirements of the service plan. Thus, the trial court could infer that Mother and Father did not have the ability to motivate themselves in the future to improve their parenting abilities. The fourth and fifth factors weigh in favor of the best interest finding as to both Mother and Father.
We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. D.O. , 851 S.W.2d at 356.
The record does not show that Mother has any plan for the children. Father wanted "full custody" of the children, and he planned to go to Denver and work even though he testified that he is disabled and unable to work. Father explained that he would "save some money and devise a plan." The Department's plan is relative adoption with Father's sister who lives in New York. The trial court could have found that Father's plan is unrealistic and ill-defined. The sixth and seventh factors weigh in favor of the trial court's determination that termination of Mother's and Father's parental rights is in the best interest of the children.
The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Both Mother and Father endangered the children by engaging in drug usage, domestic violence, and criminal activity. They also failed to consistently visit the children. Based on this evidence, the court could have found that the existing parent-child relationships are not proper. This factor weighs heavily in support of the best interest finding.
The ninth factor is whether there is any excuse for the parent's acts or omissions. Mother and Father did not offer any excuses for their behavior. This factor supports the best interest finding.
Having reviewed all of the Holley factors under the appropriate standards of review, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction or believe in the mind of the trial court that termination of Mother's and Father's parental rights is in the children's best interest. Mother's Issue Five and Father's Issue E are overruled. The judgment of the trial court terminating their parental rights to the children is affirmed.

To protect the identity of the children and for convenience, the opinion will refer to the Appellants as "Father" and "Mother," and to the children by their abbreviated initials "KM" and "FM." See Tex.R.App.P. 9.8(b)(2).