

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00325-CV

**IN THE INTEREST OF S.S. AND S.S.**, Children

From the County Court, Jim Wells County, Texas
Trial Court No. 16-08-56366-CV
Honorable Michael Ventura Garcia, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Irene Rios, Justice

Delivered and Filed: November 28, 2018

AFFIRMED

Appellant K.S. appeals the trial court's order terminating her parental rights to her children, S.S.S. and S.L.S. On appeal, K.S. contends she was denied due process because she did not receive notice of the May 2, 2018 trial setting. K.S. also argues the evidence is legally and factually insufficient to support the trial court's predicate findings under sections 161.001(b)(1)(D), (E), (O), (P), and (R) of the Texas Family Code ("the Code") and its finding that termination of her parental rights is in the children's best interests. We affirm the trial court's order.

### BACKGROUND

K.S. gave birth to premature twins, S.S.S. and S.L.S., on August 6, 2016. At the time of their birth, both children tested positive for methadone. The children were placed in the neonatal intensive care unit and experienced withdrawal symptoms. Shortly after their birth, the

Department of Family and Protective Services ("the Department") was contacted and Department case worker, Nelva Perez, was sent to interview K.S. and the children's father, M.S. Perez met with K.S. and asked whether she knew why the children tested positive for methadone. According to Perez, K.S. became agitated and stated she did not know. Perez further indicated K.S. was unable to provide a prescription for methadone. As a result, Perez had reason to believe K.S. was responsible for the children's condition. Thereafter, the Department filed suit seeking emergency possession of the children, appointment as the children's temporary sole managing conservator, and termination of K.S. and M.S.'s parental rights. When the children were released from the hospital, they were placed with M.S. on the condition that he live with his maternal aunt and uncle, who had raised M.S. since his parents' deaths.

After the children's removal, the trial court held the statutorily required status and permanency hearings. A court-ordered family service plan was ultimately created by the Department for K.S. and M.S., specifically requiring K.S. to complete an in-patient drug treatment program, maintain employment to demonstrate she could provide for the children's basic needs, complete a psychosocial evaluation, complete individual counseling, participate in supervised visitation, complete a drug and alcohol dependency assessment, complete substance abuse counseling, submit to drug testing, complete parenting classes, and refrain from criminal activity and behaviors that endanger the children. K.S. signed the service plan on October 12, 2016, and it was filed with the trial court that same day.

According to Perez, neither M.S. nor K.S. complied with the service plan. The record reflects K.S. did not complete substance abuse counseling, parenting classes, or individual counseling. K.S. also failed to submit to one of her scheduled drug tests and would not provide the Department with confirmation that she completed an in-patient drug treatment program. As a result, the trial court set the matter for trial on February 7, 2018. However, the trial was reset for

May 2, 2018, and the trial court heard testimony from: (1) Perez; (2) Katesha Houston, K.S.'s substance abuse counselor; (3) M.S.'s maternal aunt who had been caring for the children as a foster mother since the children's birth; and (4) M.S. K.S. did not appear at trial.

Perez testified she began working with the family as soon as the Department became involved with the children at the hospital. She testified that because the children were born addicted to methadone and exhibiting withdrawal symptoms, the children were not placed with K.S., but instead were placed with M.S. on the condition that he live with his maternal aunt and uncle. Perez testified that the Department began offering the parents services; however, K.S. did not complete several of the services required of her. Specifically, K.S. did not complete parenting classes or individual counseling sessions. Perez added that K.S. initially met with a substance abuse counselor but stopped attending sessions after two months. Perez stated that K.S. told her she stopped attending the counseling sessions because she was going to attend an in-patient treatment program. Perez added however that K.S. refused to sign a release to give the Department access to the records at the in-patient treatment facility even though K.S. was court-ordered to provide the Department with documentation. As to drug testing, Perez testified it was difficult to find K.S. and schedule drug tests, and K.S. did not always show up for the scheduled drug tests and of the tests she completed, she failed some of them. Most recently, K.S.'s last drug test, which was taken the month of the trial, tested positive for amphetamines and methamphetamines. The record also reflects that in addition to testing positive for amphetamines and methamphetamines, K.S. was arrested during the pendency of the proceeding because she was found with crack cocaine in her vehicle. The record reflects K.S. was also arrested for shoplifting.

In addition to K.S.'s drug use and arrests, Perez testified that K.S. did not regularly visit the children. There were several occasions in which K.S. would simply not show up for visits. Perez specifically testified that of the 36 scheduled visits, K.S. only attended six. With regard to

one of those visits, Perez explained that the Department had to intervene and ask K.S. to leave because she was falling asleep "while carrying one of the children." Perez also added she did not believe there was a bond between K.S. and the children. With regard to K.S.'s employment, Perez testified K.S. claimed to work for a trucking company, but at no time did she provide documentation of her employment.

Perez also testified about the children's current placement. According to Perez, the children were initially placed with M.S. so long as he lived with his maternal aunt and uncle; however, about a month after placement, M.S. was eventually asked to move out of the residence due to his continual drug use. Thereafter, the children remained with M.S.'s maternal aunt and uncle. Perez testified that the children's placement is "a good environment," and all the children's needs are being met. Perez described the children as loved and happy living in the only home they have ever known. She stated the children's placement parents have good parenting abilities and provide a safe and stable home for the children. Developmentally, the children are on target and thriving. Moreover, they appear to be well bonded with their placement parents. Perez also added M.S.'s maternal aunt and uncle plan to adopt the children, and it would be in the best interests of the children to remain with their placement.

K.S.'s substance abuse counselor, Katesha Houston, also testified at the trial. Houston testified she is a licensed chemical dependency counselor who began working with K.S. as part of the Department's service plan. Houston stated she met with K.S. consistently once every other week for two months until K.S. stopped coming to sessions. According to Houston, the last time she met with K.S. was about a year ago. Houston stated that during her sessions with K.S., K.S. remained in "defense mode about [her] drug use" and did not directly address her substance abuse problems or admit she had a serious drug problem. Houston explained that as a result, she tried an educational approach to help K.S. understand the seriousness of her addiction disease. Houston

further testified she believed her approach with K.S. was going well until K.S. stopped coming to the sessions. Houston stated that during her last session with K.S., K.S. indicated she was going to enter a drug rehabilitation program, but there is no evidence K.S. completed the program. Houston concluded her testimony, stating she did not believe K.S. succeeded in the counseling sessions because she failed to admit she had a drug problem and was not dedicated to becoming clean and sober for her children.

The trial court also heard testimony from M.S.'s maternal aunt, who as indicated above, has been caring for the children as a foster mother since the children's birth. She testified the children were initially placed in her home with M.S., but after one month, M.S. failed a drug test and as a result, had to move out of the house. The foster mother added that although M.S. moved out of the house, he continued to financially support the children by paying regularly for monthly expenses. According to the foster mother, M.S. had inherited a substantial amount of money – close to $200,000.00 – from his grandparents and gave it to her and her husband to use for the children's expenses. The foster mother added, however, that prior to giving them the money, K.S. had spent a significant amount of it – approximately $70,000.00 of it – in three months. With regard to K.S., the foster mother testified neither her nor her husband liked K.S. and did not believe K.S. could provide for her children. The foster mother added K.S. has stolen from her family and has put the children at risk due to her ongoing drug use.

Finally, the trial court heard testimony from M.S., who testified he is currently working in the oil fields as a completion fluid engineer. M.S. testified he did his best to visit his children in accordance with the visitation schedule set out by the Department, however, there are times when he is unable to make his visits because of his work schedule. M.S. added, however, that he financially supported his children, and over the last six months, he has visited his children ten to fifteen times. M.S. further stated he tried to keep up with all his service plan requirements, but

again, his work schedule made it difficult. With regard to K.S., M.S. testified they live together and have a "great relationship." He explained her absence at the hearing was because "she had no idea this court hearing was today," and she did not believe her rights could be terminated. He further testified neither he nor K.S. are drug addicts, and he uses marijuana only recreationally. When asked about the children's birth, M.S. testified he disagreed with the doctors that the children experienced withdrawal symptoms and stated that he did not "think that any of the drugs that were in their system would affect them at all." When asked about K.S.'s in-patient treatment, M.S. stated she attended a rehabilitation center for thirty days.

At the end of the bench trial, the trial court found clear and convincing evidence that K.S.'s parental rights should be terminated. Specifically, the trial court found K.S.: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-beings; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-beings; (3) failed to comply with provisions of a court order that set out the actions necessary for the return of the children; (4) used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program; and (5) was the cause of the children being born addicted to alcohol or a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P), and (R). The trial court further found termination of K.S.'s parental rights would be in the children's best interests. *See id*. § 161.001(b)(2). Accordingly, the trial court rendered an order terminating K.S.'s parental rights.[1] Thereafter, she perfected this appeal.

---

[1] In the order, the trial court also terminated M.S.'s parental rights to the children, and he filed a notice of appeal challenging the trial court's order. We ultimately dismissed that appeal for want of prosecution. *See In re S.S. and S.S., Children*, No. 04-18-00325-CV, 2018 WL 5018796, at *1 (Tex. App.—San Antonio Oct. 17, 2018, no pet.) (mem. op.).

**ANALYSIS**

On appeal, K.S. raises the following arguments. K.S. first argues she was denied due process because she did not receive notice of the May 2, 2018 trial setting. K.S. also argues the evidence is legally and factually insufficient to support the trial court's predicate findings under sections 161.001(b)(1)(D), (E), (O), (P), and (R) of the Texas Family Code ("the Code") and its finding that termination of her parental rights is in the children's best interests. We begin by addressing K.S.'s first contention.

### *Notice of Trial*

In her first issue, K.S. contends that she was denied due process because she was not notified of the May 2, 2018 trial setting, and as a result, she was unable to participate in the proceeding. The Department counters, arguing K.S. had notice of the trial setting because her trial counsel had notice and appeared on her behalf at trial. Thus, according to the Department, notice was imputed.

Rule 8 of the Texas Rules of Civil Procedure provides that "[a]ll communications from the court or other counsel with respect to a suit must be sent to the attorney in charge." TEX. R. CIV. P. 8. This court has also recognized that when a party is represented by counsel, neither the trial court nor the clerk may communicate directly with that party. *In re G.N.M.*, No. 04-10-00729-CV, 2011 WL 1044407, at *1 (Tex. App.—San Antonio Mar. 23, 2011, pet. denied) (mem. op.). We further stated that "[t]he notice requirements for setting contested cases are satisfied by serving the attorney of record." *Id.* (citing TEX. R. CIV. P. 21a, 245). Accordingly, counsel's knowledge of a trial setting is imputed to his client. *In re D.V.*, 480 S.W.3d 591, 604 (Tex. App.—El Paso 2015, no pet.); *In re F.E.M.*, No. 11-12-00257, 2013 WL 1092716, at *6 (Tex. App.—Eastland 2013, pet. denied) (mem. op.); *In re G.N.M.*, 2011 WL 1044407, at *1.

Here, the record reflects that on November 9, 2016, the trial court appointed legal counsel – Joel Cruz Resendez – to represent K.S. in the termination proceeding. Thereafter, the trial court sent all notices of settings, including the notice setting the May 2, 2018 trial setting, to Mr. Resendez. *See In re G.N.M.*, 2011 WL 1044407, at \*1. At the May 2, 2018 setting, K.S. did not appear; however, Mr. Resendez appeared on behalf of K.S. at the trial. Accordingly, Mr. Resendez's knowledge of the setting was imputed to K.S. *See In re D.V.*, 480 S.W.3d at 604; *In re F.E.M.*, 2013 WL 1092716, at \*6; *In re G.N.M.*, 2011 WL 1044407, at \*1. We therefore hold K.S. had notice of the May 2, 2018 date, and overrule K.S.'s first issue.

### Sufficiency of the Evidence

Turning to K.S.'s sufficiency arguments, K.S. argues the evidence is insufficient to support the trial court's findings that she: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-beings; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-beings; (3) failed to comply with provisions of a court order that set out the actions necessary for the return of the children; (4) used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program; and (5) was the cause of the children being born addicted to alcohol or a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P), and (R). K.S. also argues the evidence is insufficient to support the trial court's finding that termination of her parental rights was in the children's best interests.

### Standard of Review

To terminate parental rights pursuant to section 161.001, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *Id*. § 161.001(b). The applicable burden of proof is the clear and

convincing standard. *Id.* § 161.206(a). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard of review because termination of a parent's rights to a child results in permanent and severe changes for both the parent and child, thus, implicating due process concerns. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015).

When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency). In sum, an appellate court must determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that termination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *In re J.P.B.*, 180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

*Statutory Termination Grounds*

As indicated above K.S. asserts the evidence is legally and factually insufficient to support termination pursuant to grounds (D), (E), (O), (P), and (R). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). If the trial court finds multiple predicate grounds, we will affirm based on any one ground because only one is necessary for the termination of parental rights. *Id.*

We begin our analysis by first considering whether the evidence is sufficient to support the trial court's finding that K.S. engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-beings. *See* TEX. FAM. CODE ANN § 161.001(b)(1)(E). According to K.S., the evidence is insufficient to establish that she engaged in conduct that endangered the children because she never had physical custody of the children, and therefore, she at no point had "the means or opportunity to endanger the children." We disagree.

Ground E of section 161.001(b)(1) provides that a trial court may terminate a person's parental rights to his/her child if there is clear and convincing evidence that the person "knowingly placed or allowed the child to remain in conditions or surroundings which endangers the physical or emotional well-being of the child." *Id.* Endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). It "means to expose to loss or injury." *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.–Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). It refers to the parent's conduct as evidenced by the parent's acts as well as omissions or failures to act. *Id.* at 366-67. "The conduct to be examined includes what the parent did both before and after the child was born." *Id.*; *see In re E.N.C.*, 384 S.W.3d at 804–05. Moreover, the conduct does not have to have been directed at the child or actually harm the child. *In re K-A.B.M.*, 551 S.W.3d 275, 285 (Tex. App.—El Paso 2018, no pet.); *In re L.E.S.*, 471 S.W.3d 915, 923 (Tex. App.—Texarkana 2015, no pet.); *In re M.J.M.L.*, 31 S.W.3d 347, 350 (Tex. App.—San Antonio 2000, pet. denied). Ground E is satisfied by proof that parental conduct jeopardized or exposed to loss or injury the child's physical or emotional well-being. *Boyd*, 727 S.W.2d at 533; *In re L.E.S.*, 471 S.W.3d at 923; *In re M.J.M.L.*, 31 S.W.3d at 351. Nevertheless, termination under this ground must be based on more than a single act or omission; a voluntary, deliberate,

and conscious course of conduct by the parent is required. *In re K-A.B.M.*, 551 S.W.3d at 285; *In re L.E.S.*, 471 S.W.3d at 923; *In re M.J.M.L.*, 31 S.W.3d at 350–51

Illegal drug use may support termination under ground E because it exposes a child to the possibility that his/her parent may be impaired or imprisoned. *In re O.T.*, No. 06-17-00114-CV, 2018 WL 1281794, at *7 (Tex. App.—Texarkana Mar. 9, 2018, pet. denied) (mem. op.). Numerous courts of appeals have pointed out that "[d]rug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct." *Id.*; s*ee In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009); *In re L.E.S.*, 471 S.W.3d at 924; *In re H.D.*, No. 01-12-00007-CV, 2013 WL 1928799, at *11 (Tex. App.—Houston [1st Dist.] May 9, 2013, no pet.) (mem. op.); *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex. App.—Texarkana 2011, no pet.); *In re R.W.*, 129 S.W.3d 732 (Tex. App.—Fort Worth 2004, pet. denied).

Here, the record reflects K.S. used methadone while she was pregnant with the twins. The Department caseworker testified that at the time of their birth, both children tested positive for methadone. The record further reflects that when the children were placed in the neonatal intensive care unit, they experienced withdrawal symptoms. And although K.S. indicated she did not know why the children tested positive for methadone and she did not have a prescription for methadone, it was within the trial court's domain not to believe K.S. *See In re J.P.B.*, 180 S.W.3d at 573 (stating trial court may weigh credibility of witnesses). The record also reflects K.S. used other drugs. The evidence shows that during the pendency of the case, K.S. tested positive for amphetamines and methamphetamines on more than one occasion. The Department caseworker testified that as recent as the month of trial, K.S. tested positive for amphetamines and methamphetamines. In addition to the evidence that K.S. failed to remain drug free, K.S. was arrested during the pendency of the case for possession of crack cocaine. "A parent's failure to remain drug-free while under the Department's supervision will support a finding of endangering

conduct under subsection (E) even if there is no direct evidence that the parent's drug use actually injured the child." *In re O.T.*, 2018 WL 1281794, at \*7 (quoting *In re J.A.W.*, No. 02-08-215-CV, 2009 WL 579287, at \*4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (mem. op.) (per curiam)). Here, however, there is direct evidence that K.S.'s drug use actually injured the twins as they were both born addicted to methadone. Thus, based on the evidence produced at trial, we conclude that a rational jury could have reasonably formed a firm conviction or belief that K.S. engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical and emotional well-beings. *In re J.F.C.*, 96 S.W.3d at 263. We therefore overrule the sufficiency complaint with regard to this predicate ground.

*Best Interests*

Turning to K.S.'s challenge to the sufficiency of the evidence regarding best interest, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing the evidence within the *Holley* framework, we note that evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2012). In other words, the absence of evidence as to some of the *Holley* factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child — not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

In addition to the *Holley* factors, we recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, to determine whether a

child's parent is willing and able to provide the child with a safe environment, we also consider the factors set forth in section 263.307(b) of the Code. *Id.*

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve State of burden to prove best interest). In conducting a best interest analysis, a court may consider in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, a trier of fact may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

Here, after reviewing the evidence in light of the *Holley* factors and statutory factors outlined in section 263.307(b), we conclude the evidence was such that the trial court could have reasonably determined termination of K.S.'s parental rights was in the children's best interests. *See In re J.P.B.*, 180 S.W.3d at 573; *In re H.R.M.*, 209 S.W.3d at 108. The evidence shows K.S. continued to engage in conduct that demonstrated she lacked parenting abilities. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The trial court heard testimony from the Department caseworker and K.S.'s substance abuse counselor that K.S. used drugs before and after the children's birth, endangering their emotional and physical well-beings. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. Moreover, the record reflects K.S. tested positive for amphetamines and methamphetamines on more than one occasion during the pendency of the case. Accordingly, the trial court could have measured K.S.'s future conduct by her past conduct of drug use and reasonably determined termination was in the children's best interests. *See In re E.D.*, 419 S.W.3d at 620.

In addition to K.S.'s ongoing drug use, the evidence also established that K.S. was arrested on two occasions during the pendency of the case. And despite the services the Department offered to K.S., the record reflects that K.S. failed to comply with the service plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *Holley*, 544 S.W.2d at 371–72. At no point does the record show that K.S. completed her counseling sessions or an in-patient treatment program. Rather, K.S.'s substance abuse counselor testified that K.S. failed to admit she had a drug problem and was not dedicated to becoming clean and sober for her children. As to the children's desires, there was no evidence of the children's desires as they are very young; however, the trial court heard testimony from the Department caseworker and the children's foster mother that the children were bonded to their placement family. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. The Department caseworker specifically testified the children were thriving with the foster placement and it would be in the children's best interests to be adopted by them.

Considering all the evidence under the two evidentiary standards, we conclude the trial court could have reasonably determined termination was in the best interests of the children. *See In re J.P.B.*, 180 S.W.3d at 573; *In re H.R.M.*, 209 S.W.3d at 108. Given that the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding termination of K.S.'s parental rights would be in the children's best interests. *See In re J.P.B.*, 180 S.W.3d at 573; *In re H.R.M.*, 209 S.W.3d at 108.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Marialyn Barnard, Justice