**Affirmed and Memorandum Opinion filed March 12, 2019.**



In The

# Fourteenth Court of Appeals

NO. 14-18-00897-CV
NO. 14-18-00898-CV

**IN THE INTEREST OF K.T.E., AND M.A.E., Children**
**IN THE INTEREST OF M.D.E, Child**

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-11109**
**Trial Court Cause No. 2017-04419J**

## M E M O R A N D U M   O P I N I O N

K.D.G. (Mother) appeals the trial court's decrees terminating her parental rights as to her daughter, K.T.E., and sons, M.A.E., and M.D.E.[1] On appeal, Mother challenges the legal and factual sufficiency of the evidence supporting the predicate grounds under which her parental rights were terminated and the finding that termination was in her children's best interest. We affirm.

---

[1] The Department of Family and Protective Services (the Department) filed motions to terminate K.D.G.'s parental rights in two separate suits affecting the parent child relationship, one as to K.T.E. and M.A.E. and one as to M.D.E. The cases were tried together.

## Background

### I.     Department History

The facts in this section are taken from an affidavit signed by the Department's caseworker that was admitted at trial.[2]

#### A.     Erratic Behavior

In April 2017, the Department received a referral alleging neglectful supervision of K.T.E. and M.A.E. The referral alleged that Mother was driving recklessly with K.T.E. and M.A.E. in the vehicle and that she was swerving into multiple lanes of traffic. Mother was arrested for failure to maintain a single lane. Mother said that she was instructed by a friend who had recently died to swerve into traffic.

At the time of the April 2017 referral, Mother was living with her four children: K.T.E., M.A.E., M.D.E., and D.G. Mother and the children had recently moved in with D.G.'s father, D.B. D.B. said that Mother had been acting strange and had threatened to kill him.

In May 2017, the Department received a new referral alleging Mother had given D.G. wine and D.G. was running into walls and acting drunk. D.B. subsequently reported to the Department that Mother was behaving oddly.

#### B.     Physical Violence

The May 2017 referral also alleged that about a year before, Mother had hit M.A.E. and bruised his face. After the above referrals were made and D.B. reported Mother's behavior, Mother went for a psychological evaluation. After she returned, she hit K.T.E. in the face and head multiple times. K.T.E. told the

---

[2] Trial counsel objected to the affidavit as hearsay but does not complain on appeal of the trial court's admission of the document.

caseworker that Mother's hits "kind of hurt." M.A.E. and M.D.E. also reported that Mother hit K.T.E. on her head. M.A.E. said it was about ten times. Mother told K.T.E., M.A.E., and M.D.E. to lie to the Department and the police about the incident.

After another week, the Department received a new referral. This referral alleged that Mother had swung at K.T.E. and hit her on the head, back, and shoulders. K.T.E. had bruises on her back.

In September 2017, D.B. reported that the children told him Mother previously had punched M.A.E. in the nose. Mother had also tried to stab D.B. with a boxcutter.

Mother had a prior referral to the Department in 2006 for physically abusing M.D.E. "on an ongoing basis." M.D.E. had a cut on his forehead after Mother hit him with a bottle of water and had bruises on his face on another occasion. Mother and M.D.E.'s father successfully completed family counseling and demonstrated the ability to provide a safe home at that time. That case was closed.

In 2015 after K.T.E. and M.A.E. were born, the Department received another referral, alleging that Mother physically abused M.A.E. and K.T.E.'s father sexually abused her. The case was not completed because Mother moved to Pennsylvania with the children. The Department received another referral in 2016 alleging Mother physically abused all four of her children.

### C. Criminal History

After Mother was released from jail for failure to maintain a single lane, she was arrested for evading arrest after failing to stop at a stop sign. She was also charged with two counts of possession of a dangerous drug. The drug charges were dropped. Subsequently, Mother was arrested for trespassing. After Mother was

released from jail, she returned to Pennsylvania for a few months and then came back to Houston.

### D.    Placement of Children

The caseworker advised D.B. not to allow Mother to be around the children. He agreed to do so and to take care of the children. D.B. took care of all four children for approximately three months, but then left K.T.E., M.A.E., and M.D.E. with their maternal aunt.

The Department was contacted by the children's aunt. The Department provided the aunt with a family service plan in which she agreed not to allow Mother to have unsupervised contact with the children and to contact the Department if Mother showed up. The aunt subsequently told the Department she did not know how she would be able to take care of the children financially, although she wanted to do so.

The trial court subsequently ordered placement of K.T.E., M.A.E., and M.D.E. with the Department as temporary managing conservator. They were relocated to a group foster home. The Department's goal for K.T.E. and M.A.E. was adoption by a non-relative. The Department did not seek adoption for M.D.E., in accordance with his wishes. At the time of the hearing, M.D.E. was seventeen-years-old, and although he did not want to be adopted, he also did not want to be returned to Mother.

## II.    Trial Proceedings

The caseworker testified at trial that she developed a family service plan for Mother, but Mother was difficult to locate because she was in and out of jail. Mother also relocated to Pennsylvania while the children were in Department care. She was unavailable to the children due to incarceration or absence from the state

for over a year while the children were in Department care. Once Mother received the plan, she did not comply with it in several respects: Mother completed the required psychiatric and substance abuse evaluations but did not obtain stable housing, provide proof of stable employment, or maintain contact with the Department during the lawsuit. Mother also failed to attend hearings and parenting classes.

Mother visited M.D.E. once while he was in the Department's care but did not visit K.T.E. or M.A.E. There was a court order limiting Mother's ability to visit the children, but the record does not show that she attempted to petition the court for contact with the children during the time that she was incarcerated or out of state. The caseworker testified that in her opinion, it was in the best interest of K.T.E., M.A.E., and M.D.E. for Mother's parental rights to be terminated because Mother had "been putting her kids in and out of [the Department], which [is] trauma[tic] to a child" and had "not demonstrated or showed [the Department she understood] the serious [circumstances] she put her children in."

The caseworker testified that K.T.E. and M.A.E. were placed in a nonadoptive group foster home but had potential adoptive placements with one family. M.D.E. did not want to be adopted. In the Department's permanency report, admitted at trial, the Department reported that M.D.E. was placed in a group foster home and was "progressing and doing great." He attended school and church and was a role model to others. He would like to stay in his current placement, age out of the system, and go to college. K.T.E. and M.A.E. were in the same group home as M.D.E. K.T.E. was doing well and liked being placed with her brothers. She interacted well with her teachers and others in the home. M.A.E. similarly was doing well.

The caseworker further testified that K.T.E. and M.A.E. wanted to be

adopted and were happy and doing very well in school. They had been behind in school under Mother's care. A foster family was interested in adopting them at the time of trial. Even though the family would not be adopting M.D.E., they would consider him one of their sons. M.D.E. told the caseworker that his siblings should be adopted and that Mother should get help. M.D.E. did not have any plans to return to his mother and did not want his siblings to return to her either. Mother was living in a temporary shelter at the time of trial but was on the shortlist for permanent housing.

The child advocate volunteer testified that the children were flourishing at their current location and were much happier than they had been with Mother. In his opinion, termination of Mother's parental rights was in the children's best interest because Mother's behavior had established a pattern of mistreatment of the children. This behavior included a long history of substance abuse and criminal activity. The advocate volunteer also testified that M.D.E. was afraid for K.T.E. and M.A.E. to go back into Mother's care.

The trial court signed final orders modifying the prior orders and decrees terminating Mother's parental rights. The Department was appointed sole managing conservator of K.T.E., M.A.E., and M.D.E. The trial court found Mother engaged in conduct described in subsections (E), (N), and (O) of section 161(b)(1) of the Family Code. The court additionally found termination of Mother's parental rights was in the best interest of K.T.E., M.A.E., and M.D.E.[3]

### *Analysis*

Parental rights can be terminated upon clear and convincing evidence that (1) the parent has committed an act described in section 161.001(b)(1) of the

---

[3] The trial court also terminated the parental rights of K.T.E., M.A.E., and M.D.E.'s father. He is not a party to this appeal.

Family Code, and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(b)(1), (2); *see also In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *In re S.R.*, 452 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights. *Id*.

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to clear and convincing evidence. Tex. Fam. Code. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re S.R.*, 452 S.W.3d at 358. "But the constitutional and statutory requirement that parental rights cannot be terminated unless grounds for termination are established by clear and convincing evidence necessarily means that the ultimate burden of proof based on clear and convincing evidence remains with the party seeking to terminate the parental rights." *In re L.M.I.*, 119 S.W.3d 707, 720 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume the factfinder resolved disputed facts in

favor of its finding if a reasonable factfinder could do so, and we disregard all evidence a reasonable factfinder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *See In re J.O.A.*, 283 S.W.3d at 345. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d at 712.

## I.    Predicate Termination Grounds

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the children's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We begin by addressing the trial court's finding under subsection (E).

Termination of parental rights is warranted under this subsection if the Department proves by clear and convincing evidence, in addition to the best-interest finding, that a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). "Conduct"

8

under subsection (E) includes acts, omissions, or failures to act. *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). In this context, endanger means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). It is not necessary that the child actually suffer injury from the parental misconduct. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Evidence of domestic violence may be considered as evidence of endangerment under subsection (E). *In re K-A.B.M.*, 551 S.W.3d 275, 286 (Tex. App.—El Paso 2018, no pet.). A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *Id*. A trial court can also consider a parent's mental state as endangering a child. *Id*. Incarcerations, criminal history, and drug use can also show a course of conduct from which a factfinder can determine a parent endangered a child. *In re F.H.*, No. 14-18-00209-CV, 2018 WL 3977931, at *6 (Tex. App.—Houston [14th Dist.] Aug. 16, 2018, no pet.) (mem. op.).

The record demonstrates that Mother physically abused all three children.[4] Referrals to the Department for physical abuse began in 2006 when M.D.E. was five years old. The report stated that Mother abused M.D.E. "on an ongoing basis." In one incident, Mother hit M.D.E. with a bottle, resulting in a cut on his forehead.

---

[4] Mother argues that the caseworker's testimony regarding physical abuse is "insignificant" because the 2015 Department referral was "ruled out." The caseworker testified that the Department was unable to finish that case because Mother moved to Pennsylvania with the children. Mother does not challenge the veracity of the other incidents of physical abuse.

Mother was also arrested after striking M.D.E. with a bottle. At other times, M.D.E. had bruises on his face. Several years later, Mother hit K.T.E., then eight years old, "in the head and face multiple times." In addition, the Department reported that Mother hit M.A.E. in the face, causing bruises, and gave wine to D.G., causing her to act drunk.

Moreover, Mother purposely drove her car in and out of traffic, which endangered K.T.E. and M.A.E. She said she did this because her friend who had died purportedly told her to do so.

Mother also had a considerable criminal history. Mother was arrested for failure to maintain a single lane after the driving incident mentioned above. Mother was later arrested for evading arrest, possession of a dangerous drug, and trespassing.

Mother was absent from the children's lives during much of the time they were in Department care. The caseworker could not locate Mother at first because she was frequently in jail during that time. Mother also was in Pennsylvania during part of that time. Mother's absences due to incarceration and being out of state while the children were in Department custody amounted to longer than a year. Additionally, at the time of trial, Mother did not have permanent housing.

Given Mother's physical abuse of the children, erratic behavior, criminal history and incarceration, and absence from the children's lives, the trial court could have found that Mother engaged in conduct that endangered the physical or emotional well-being of K.T.E., M.A.E., and M.D.E. *See In re F.H.*, 2018 WL 3977931, at *6 (holding father's incarcerations, criminal history, and drug use, along with absence from child's life, created a course of conduct from which the factfinder could have determined father endangered daughter's emotional and physical well-being); *In re K.L.P.*, No. 14-18-00582-CV, 2018 WL 6684275, at *8

(Tex. App.—Houston [14th Dist.] Dec. 20, 2018, pet. denied) (mem. op.) (holding parent's abuse of child and spouse "created an environment which endangered [child's] physical and emotional well-being"); *In re J.I.T.P.*, 99 S.W.3d at 845 (concluding that mother's mental state in addition to domestic violence between the parents supported a finding of endangerment).

Reviewing all the evidence in the light most favorable to the termination finding under subsection (E), we conclude that a reasonable factfinder could have formed a firm belief or conviction as to the truth of the finding that Mother's conduct endangered K.T.E., M.A.E., and M.D.E. *See In re J.O.A.*, 283 S.W.3d at 344. Having reviewed the entire record, we further conclude the disputed evidence is not so significant that the trial court, as factfinder, could not have formed a firm belief or conviction that Mother's conduct endangered her children. *See In re J.F.C.*, 96 S.W.3d at 266. We conclude the evidence is legally and factually sufficient to support the predicate termination finding under subsection (E).

Having thus concluded, we need not review the sufficiency of the evidence to support the subsection (N) and (O) findings. *See In re A.V.*, 113 S.W.3d at 362. We overrule issues one through three.

## II.    Best Interest of the Children

We review the entire record in deciding a challenge to the court's best-interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Holley*, 544 S.W.2d at 372; *In re D.R.A.*, 374 S.W.3d at 533. The evidence supporting termination under one of the grounds listed in section 161.001(b)(1) can also be considered in support of a finding that termination is in the best interest of the child. *In re F.H.*, 2018 WL 3977931, at *8 (citing *In re C.H.*, 89 S.W.3d at 27).

> **A.** **The desires of the children, the plans for the children by the individuals or agency seeking custody, and the stability of the home or proposed placement**

A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best-interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

At the time of trial, the children were happily placed in a group foster home.

12

They were doing well there, and K.T.E. and M.A.E. wanted to be adopted by a foster family that wanted to adopt them. The potential adoptive family also wanted to provide a home for M.D.E. Although M.D.E. did not want to be adopted, he wanted his siblings to be adopted and not returned to Mother. M.D.E. similarly did not want to return to Mother. The caseworker testified that the adoptive foster family gave the children an opportunity "to have a family like they have not had in a long time . . . [m]aybe ever." The potential foster mother testified that even though M.D.E. did not want to be adopted, "he would be considered one of [their] sons."

### B. The present and future physical and emotional needs of the children and the present and future emotional and physical danger to the children

A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re F.H.*, 2018 WL 3977931, at *8 (citing *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.), and Tex. Fam. Code § 263.307(b)(7), (12)). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* (citing *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.)).

As discussed above, Mother's repeated physical abuse of the children, erratic behavior, criminal history and incarcerations, and absence from the children's lives created a course of conduct from which the factfinder could have determined that Mother endangered the children's emotional and physical well-being. Moreover, the children were very behind in school under Mother's care and were flourishing in school and otherwise in the Department's care. They were much happier in the Department's care than they had been with Mother.

**C.    Acts or omissions of the parent which may indicate the existing parent child relationship is not appropriate and any excuse for the parent's acts or omissions**

The caseworker testified that she had difficulties contacting Mother to give her the family service plan because Mother was incarcerated during much of the period when the children were in the Department's care. When Mother finally received the plan, she complied with only two of its requirements and was absent from the children's lives for more than a year due to her various incarcerations and because she left the state while the children were in Department care. Mother did not contact the Department during that year. Mother likewise did not attend any court hearings to ask the court for visitation rights. Mother expressly states in her appellate brief that she "has no excuses for her acts or omissions."

**D.    Balancing the Best Interest Factors**

The best interest factors weigh in favor of the trial court's finding that termination of Mother's parental rights was in the best interest of K.T.E., M.A.E., and M.D.E. The record supports the following findings: (1) K.T.E. and M.A.E. desired to be adopted and M.D.E. desired to stay in Department care until he turned eighteen; (2) the Department had plans for K.T.E. and M.A.E. to be adopted and for M.D.E. to move in with the adoptive family in a stable home environment; (3) the present physical and emotional needs of the children were being met and would continue to be met in Department care; (4) the children would be in danger both physically and emotionally in Mother's care; and (5) Mother offered no excuses for her absence from the children's lives and failure to comply with the family service plan. Thus, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination was in the children's best interest. We overrule Mother's fourth issue.

### *Conclusion*

We affirm the judgment of the trial court.

/s/    Frances Bourliot
       Justice

Panel consists of Justices Christopher, Jewell, and Bourliot.

15