

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00242-CV

IN THE INTEREST OF A.J.F., A CHILD

On Appeal from the 69th District Court
Dallam County, Texas
Trial Court No. 12,306, Honorable Jack M. Graham, Presiding

February 4, 2021

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant S.G., the mother, appeals from the trial court's final order terminating her parental rights to her child, A.J.F.[1]  Appellee, is the Texas Department of Family and Protective Services (the "Department").  S.G. challenges the sufficiency of the evidence supporting the trial court's findings that (1) violations of four statutory predicate grounds for termination support the trial court's findings under section 161.001(b)(1)(D), (E), (N)

---

[1] To protect the parties' privacy, we refer to Appellant and her child by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020); TEX. R. APP. P. 9.8(b).  The father's parental rights to A.J.F. were also terminated however he did not file an appeal.

and (O) of the Texas Family Code,[2] and (2) that termination of S.G.'s parental rights is in A.J.F.'s best interest. We affirm the trial court's order.

## Background

In February 2019, the Department initially became involved in the underlying case when it received a report that A.J.F. tested positive for benzodiazepines[3] and opiates at birth. At the hospital, S.G. tested positive for amphetamines and opiates. She admitted to using intravenous heroin the day before admission to the hospital and using methamphetamines on the morning of admission. She also told the Department's investigator that she had used illegal drugs throughout her pregnancy and had a history of drug use starting at sixteen years of age when she began using marijuana. She also reported A.J.F.'s father was violent and refused to allow her to obtain prenatal care.[4] Prior to A.J.F.'s birth, S.G. had been living with her sister who refused to allow her to return with A.J.F. when she discovered Child Protective Services was involved. A.J.F. was then placed in foster care.

On March 1, 2019, the Department filed a petition to terminate S.G.'s parental rights. The trial court issued an order for A.J.F.'s protection based on an emergency finding that A.J.F. was in immediate danger to his physical health or safety and had been a victim of neglect. S.G. tested positive for methamphetamines.

---

[2] TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O) (West Supp. 2020). Throughout the remainder of this memorandum opinion, provisions of the Texas Family Code will be cited as "§ __" and "section __."

[3] Benzodiazepines are medications known as tranquilizers, e.g., Valium and Xanax.

[4] S.G. refused to reveal the father's location.

On August 21, 2020, the trial court held a bench trial via Zoom videoconferencing at which S.G. appeared and testified on her own behalf. The trial court also heard testimony from Department caseworkers Mary Salley and Cassie Coppock, as well as A.J.F.'s foster parent, Tracie Johnson. On the same day, the trial court signed an Order of Termination finding by clear and convincing evidence that termination was warranted under Texas Family Code § 161.001(b)(1)(D), (E), (N) and (O), and that termination of S.G.'s parental rights was in A.J.F.'s best interest.

## Analysis

To terminate parental rights pursuant to section 161.001, the Department has the burden to prove by clear and convincing evidence (1) one of the predicate grounds in section 161.001(b); and (2) that termination is in the best interest of the child. *See* §§ 161.001(b), 161.206(a), *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007.[5]

In this case, the trial court found evidence of four predicate grounds supporting termination of S.G.'s parental rights and that termination of her parental rights was in the child's best interest. S.G. contends the evidence is legally and factually insufficient to

---

[5] This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard in criminal proceedings. *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied). While the State's proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

support the trial court's finding that statutory grounds supporting termination exist and termination is in A.J.F.'s best interest.

## Standard of Review

In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding is true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We give appropriate deference to the factfinder's conclusions and the role of the trial court by "assum[ing] that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that [we] should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If, after conducting our legal sufficiency review of the record evidence, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.* at 344-45.

In reviewing the factual sufficiency of the evidence, we give deference to the factfinder's findings, but also consider the disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. In conducting a factual sufficiency review, we cannot substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

4

*Statutory Grounds for Termination*

Along with a best interest finding, a finding of only one statutory ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362. Thus, on appeal, an appellant must challenge each of the statutory grounds upon which the trial court based its termination order. *In re S.J.F.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied).

That said, however, termination under section 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, so therefore, we must independently address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). Accordingly, we consider S.G.'s sufficiency challenge to the trial court's findings regarding subsections (D) and (E), and if such findings cannot be sustained, we will consider whether statutory grounds for termination exist under subsections (N) and (O).

*Statutory Subsection D*

The statutory ground for termination found in subsection D allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." § 161.100(b)(1)(D).[6] The child's environment encompasses the suitability of the child's living conditions and the conduct of parents or others in the home. In re R.S.-T, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (citing *In re S.R.*, 452 S.W.3d

---

[6] "Endangerment means to expose to loss or injury, to jeopardize." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

5

351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). We examine evidence of the parent's conduct and the child's living environment before the time the Department removes the child. *In re A.G.*, No. 07-17-00440-CV, 2018 Tex. App. LEXIS 3010, at *13-14 (Tex. App.—Amarillo Apr. 27, 2018, pet. denied) (mem. op.). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being. *In re B.W.*, No. 07-19-00248-CV, 2019 Tex. App. LEXIS 9845, at *8 (Tex. App.—Amarillo Nov. 12, 2019, no pet.) (mem. op.). Subsection D permits termination based on only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

The evidence shows that S.G. knowingly used illegal drugs throughout all relevant periods, including her pregnancy. In fact, S.G.'s decision to use illegal drugs continued through the morning of her admission to the hospital to deliver A.J.F. At birth, A.J.F. tested positive for the presence of illegal drugs, supporting an inference that S.G.'s drug use created conditions or surroundings that exposed A.J.F. to the substances while *in utero*. Further, A.J.F. continues to suffer from significant health conditions as a result of S.G.'s illegal drug use during pregnancy. We hold this evidence to be legally and factually sufficient to support the finding that S.G. knowingly placed A.J.F. in conditions or surroundings that endangered the child's physical well-being. *See In re A.B.R.*, No. 02-11-00146-CV, 2011 Tex. App. LEXIS 9033, at *9-10 (Tex. App.—Fort Worth 2011, no pet.) (mem. op.) (holding that evidence of mother's heroin use throughout pregnancy permitted factfinder to reasonably conclude mother "knowingly placed or knowingly allowed [child] to remain in conditions or surroundings that endangered his physical well-being while in the womb"); *J.T.G.*, 121 S.W.3d at 125-28 (considering evidence of

6

children's health complications caused by mother's drug use during pregnancy as conditions or surroundings that endangered the well-being of the children).

*Statutory Subsection E*

Subsection E permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." § 161.001(b)(1)(E). Under subsection E, endangerment encompasses "more than a threat of metaphysical injury or possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Rather, "endanger" means to expose the child to loss or injury or to jeopardize his emotional or physical well-being. *Id.*

The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *Id.* Courts may additionally consider parental conduct that did not occur in the child's presence, including that which occurred before the child's birth or after removal from a parent's care. *In re K.J.G.*, No., 04-19-00102-CV, 2019 Tex. App. LEXIS 7390, at * 12 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). Thus, evidence of illegal drug use by a parent and its effect on the parent's life and ability to parent may establish an endangering course of conduct under subsection E. *In re J.O.A.*, 283 S.W.3d at 346; *In re K.A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs may qualify as an endangering course of conduct.").

The Department's evidence at final hearing showed that upon A.J.F.'s removal due to S.G.'s drug use during pregnancy and their positive drug tests at birth, S.G. successfully completed a drug rehabilitation program and tested negative in February 2020, eight months before the final hearing. However, despite her boyfriend's history of substance abuse and domestic violence against S.G., she allowed him to move in with her after he was released from prison in December 2019.[7] After her negative test in February, S.G. failed to appear for other drug tests required by the Department and a court-ordered test knowing that missed tests would be regarded as "positive" for drugs. Neither did she volunteer or attempt to schedule replacement tests. At the final hearing, S.G. had been eight months without a drug test.

Further, in May 2020, S.G. indicated she wanted to relinquish her parental rights to A.J.F. Thereafter, S.G.'s communication with her caseworker all but ceased until the

---

[7] S.G.'s boyfriend was imprisoned for accumulating three DWIs and released on parole in late 2019. After his release, he was offered participation in a domestic violence program but did not attend. Neither did S.G. participate in a domestic violence program offered to her. Approximately six months after moving in with her, he violated his parole and was returned to confinement for two years.

final hearing; she failed to attend visitations with her child. In her caseworker's opinion, S.G. had engaged in conduct which endangered A.J.F.'s physical or emotional well-being.

Evidence of illegal drug use supports a conclusion that a child's surroundings endanger his or her physical or emotional well-being. *See In re G.A.*, No. 01-11-00565-CV, 2012 Tex. App. LEXIS 2472, at *11-14 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, pet. denied) (mem. op.) (parent's drug use can endanger a child's physical or emotional well-being); *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (mother violated subsection (D) and (E) when she exposed children to domestic violence, placed them in an environment of drug abuse, and refused to participate in her CPS service plan).

This evidence permitted the trial court as factfinder to form a firm belief or conviction that at the time of A.J.F.'s removal S.G. was engaged in criminal behavior, used illegal drugs, and engaged in conduct that exposed A.J.F. to benzodiazepines and opiates to a degree that posed a danger to the child. S.G.'s showing of improvement in the months that followed A.J.F.'s removal is mitigated by her re-entry into a relationship with her boyfriend who had been in prison and had a history of substance abuse and domestic violence. S.G.'s attempted avoidance of illegal drugs after February 2020 is also called into question given her repeated failure to appear for drug tests. Moreover, S.G. nearly ceased all communication with the Department and expressed a desire to relinquish her parental rights to A.J.F. In her caseworker's opinion, S.G. had engaged in conduct which endangered A.J.F.'s physical or emotional well-being. We conclude the evidence is legally and factually sufficient to support the trial court's finding under subsection E.

9

*Best Interest*

The Department is also required to prove by clear and convincing evidence that termination of S.G.'s parental rights is in A.J.F.'s best interest. *See* § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014). There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, the presumption is not irrebuttable; the Texas Family Code and direction from the Supreme Court of Texas provide additional factors for assessing the best interest of a child. *See* § 263.307; *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[8] The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child*. In re C.H.*, 89 S.W.3d at 27; *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In addition to the foregoing factors, evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination of parental rights is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28; *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount

---

[8] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). In making our determination, we may consider "circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence;" *see In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied), while measuring a parent's future conduct by his or her past conduct and determine whether termination of parental rights is in the child's best interest. *Id. See In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) ("A fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent.").

As shown above, the evidence strongly favors the trial court's finding that termination is in the best interest of the child: (1) S.G.'s drug use during pregnancy, including continued use of intravenous heroin and methamphetamine up until S.G. was admitted to the hospital; (2) failure to appear for required drug tests; (3) allowing her boyfriend to move in with her after his release from prison; (4) expressed desire to relinquish her parental rights; and (5) ceasing most communications with the Department. Further, A.J.F. is barely more than a year old, too young to express his desires, while suffering the consequences of his mother's drug usage. *See In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("when a child is too young to express [his] desires, the factfinder may consider whether the child has bonded with the foster family, is well-cared for by them, and has spent minimal time with the parent."). S.G. admitted she chose to work rather than attend videoconferencing visits with A.J.F.

11

and had not bonded with her child.[9] S.G. only appeared for two of A.J.F.'s medical appointments. As a result, she could not identify her child's infirmities, describe his medications, or articulate a caregiver's necessary role.

In the months from removal until final hearing, S.G. lived in four residences; she had no permanent residence. She lacked a job, transportation, and a driver's license. Her plan for her son was to live with her sister, accept her financial support, and find employment. Other than a conclusory statement that she would be able to take care of A.J.F.'s medical issues, S.G. did not describe how she would educate herself about his medical conditions, treatments, or medications, or how she would arrange transportation to his out-of-town medical appointments.

By contrast, evidence suggests that A.J.F.'s foster parent is adequately taking care of all his personal and medical needs. A.J.F. was living in a stable, drug-free home. Although the foster parent was not prepared to adopt A.J.F., there was some discussion about another individual who expressed an interest, had been certified as a foster parent, and passed a home study.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of S.G.'s parental rights was in the child's best interest. *See* § 161.001(b)(2); *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to

---

[9] S.G. did not attend videoconferencing visits or any in-person visits for six months prior to the final hearing. S.G. was capable of attending the videoconferences as evidenced by prior attendance using videoconferencing software.

comply with a family-service plan in holding the evidence supported the best-interest finding).  *See also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail evidence if affirming a termination judgment).  We also conclude that factually sufficient evidence supports the trial court's best interest findings.

## Conclusion

We affirm the trial court's order terminating S.G.'s parental rights.


Lawrence M. Doss
Justice


Pirtle, J., concurring and dissenting.