

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00907-CV

**IN THE INTEREST OF J.A.B.**, J.L.B., and J.B.

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00495
Honorable Kimberly Burley, Associate Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Irene Rios, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 3, 2024

AFFIRMED

Vanessa A.[1] appeals from the trial court's order terminating her parental rights to thirteen-year-old J.A.B., nine-year-old J.L.B., and seven-year-old J.B. We affirm.

### BACKGROUND

On March 28, 2022, the Department of Family and Protective Services ("the Department") filed the underlying suit to terminate Vanessa A.'s parental rights, along with an affidavit in support of emergency removal of the children. The children were removed and placed under the care of the Department. After a bench trial, the trial court terminated Vanessa A.'s parental rights pursuant to section 161.001(b)(1)(D), (E), (O), and (P) of the Texas Family Code. The trial court

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

also found that termination of her parental rights was in the best interest of the children. On appeal, Vanessa A. argues the evidence is legally and factually insufficient to support the trial court's predicate (D) and (E) findings. She also argues the evidence is legally and factually insufficient to support the trial court's best-interest finding.

**SUFFICIENCY OF THE EVIDENCE**

*A. Standard of Review*

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id*.

Vanessa A.'s parental rights were terminated pursuant to multiple predicate grounds. However, in her brief, she challenges the trial court's findings under subsections (D), (E), and (O); she does not challenge the trial court's finding under subsection (P). If, as here, the trial court terminates the parent-child relationship on multiple grounds under section 161.001(1), we may

affirm on any one ground because, in addition to finding that termination is in the child's best interest, only one predicate violation under section 161.001(1) is necessary to support a termination decree. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re D.J.H.*, 381 S.W.3d 606, 611-12 (Tex. App.—San Antonio 2012, no pet.). Thus, because Vanessa A. has not challenged the trial court's finding under subsection (P), the trial court's order terminating her parental rights may be affirmed on that ground so long as we determine under Vanessa A.'s third issue that there is legally and factually sufficient evidence to support the trial court's best-interest finding.

However, even though the trial court's unchallenged finding under subsection (P) may support its termination order, we must still consider Vanessa A.'s issues relating to the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E). Because termination findings under subsections (D) and (E) may serve as the basis for a future termination of parental rights proceeding, the supreme court has explained that due process requires that we address any appellate issue regarding the sufficiency of the evidence of a trial court's finding under either (D) or (E). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

*B. Subsection (D) and (E) Predicate Grounds*

Subsection (D) allows termination of parental rights if, along with a best-interest finding, the factfinder finds by clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (mem. op.) (quoting *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)).

Subsection (E) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court must determine "whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being." *In re C.J.G.*, 2019 WL 5580253, at \*2.

Under both subsections, "endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *Id*. at \*3 (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). "[A] parent need not know for certain that the child is in an endangering environment, awareness of such a potential is sufficient." *Id*. at \*2 (quoting *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.)). Under subsection (D), a trial court considers "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child." *Id*. "For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *Id*. "Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *Id*. Similarly, under subsection (E), "[a]n endangerment finding often involves physical endangerment, but the statute does not require that the parent's conduct be directed at the child or that the child suffer actual injury." *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at \*5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). "Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone." *Id*. (citation omitted). "Conduct that subjects a

child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *Id*. "Thus, evidence of illegal drug use by a parent and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsection (E)." *Id*.; *see In re J.O.A.*, 283 S.W.3d at 346 (holding evidence sufficient to support finding of endangerment even though father had made significant recent improvements because "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices"); *In re K-A.B.M.*, 551 S.W.3d 275, 286 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E).").

While "endanger" has the same definition under both subsections (D) and (E), "there are some distinctions in the application of subsections (D) and (E)." *In re C.J.G.*, 2019 WL 5580253, at *3. Termination under subsection D may be based upon a single act or omission. *Id*. at *3 (citing *In re R.S.-T.*, 522 S.W.3d at 109). In contrast, termination under subsection E "may not rest on a single act or omission; it must be 'a voluntary, deliberate, and conscious course of conduct.'" *Id*. (quoting *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). Additionally, "[i]n evaluating endangerment under subsection D, we consider the child's environment *before* the Department obtained custody of the child.'" *Id*. (quoting *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)) (emphasis added). "'Under subsection E, however, courts may consider conduct *both before and after* the Department removed the child from the home." *Id*. (quoting *In re S.R.*, 452 S.W.3d at 360) (emphasis added).

Vanessa A. argues there is legally and factually insufficient evidence to support termination of her parental rights under either subsection (D) or (E) because there was no evidence at trial that "any harm had happened to the children." In response, the Department points to evidence of Vanessa A.'s pattern of drug abuse that began before the Department became involved in the underlying case and continued up to the time of trial, and her history of domestic violence.

The record reflects that Vanessa A. acknowledged using illegal substances multiple times, tested positive for illegal substances multiple times, and was in and out of both inpatient and outpatient treatment programs multiple times. Vanessa A. testified at trial that she had been working with the Department since 2019 (i.e., three years before the Department filed the underlying cause) and that the primary reason for the Department's involvement in her life was her "kids' safety." When asked why there was an issue with her children's safety, she replied that it was "[b]ecause of the drug use that [she] had in [her] past." She testified her "drug of choice" was "methamphetamine."

There was also evidence of domestic violence between Vanessa A. and her significant others that affected the children. Tedi McVea, Vanessa A.'s therapist testified that in 2019, Vanessa A. had six minor children.[2] The children "have been off and on in [the] State['s] care for several years, even prior to 2019." When asked what actions caused the children to be in the State's care, McVea replied, "The mother and father of those children." According to McVea, the Department became involved because of "issues with substance abuse, domestic violence, and also some familial dynamics."

McVea has worked with Vanessa A. since 2019 with some breaks in service. McVea testified,

---

[2]The termination of her parental rights to three of those children are at issue in this appeal.

> There were some breaks due to indication of care. For example, there were periods where she would go into inpatient treatment, where there would be a planned pause in individual counseling. And there have been times where services went from mandated to elective, and during that time the consistency would vary. There was a period of time during the elective process where we did not have services for several months.

McVea testified that when the Department filed the instant case in 2022, Vanessa A. came back into his care. McVea explained there were "stressors" in Vanessa A.'s life that triggered her relapses with substance abuse, including issues with mental health, "[i]nappropriate or unhelpful peers; violen[t] or abusive relationships"; and "basic case management need issues." McVea testified Vanessa A. had completed inpatient treatment programs "twice, at a minimum" and outpatient drug treatment about four times. According to McVea, the outpatient programs were "more difficult to gauge" because "there were times she would start outpatient, and then outpatient would be interrupted by an inpatient referral," or "she would discharge from outpatient and start inpatient [and] maybe there would be an attendance issue, so she would restart inpatient." McVea testified that since April 2022, Vanessa A. had tested positive for illegal substances four times. Further, he testified that since April 2022, she had not reached a point where he could successfully discharge her from therapy.

McVea explained that Vanessa A. has a "very minimal, limited" support system that "is not sufficient." She is not employed, but has public housing. McVea was asked at trial whether, given Vanessa A.'s stage in care and her frequent relapses with substance abuse, he had an opinion as to her ability to parent small children. McVea responded, "I think, in general, the recommendation is that children are not in a household where there is active drug use." McVea testified that one trigger to Vanessa A.'s relapses is domestic violence and having contact with "her perpetrator." McVea "believe[d] there was contact between the both of them." He discussed Vanessa A. being the "victim of domestic violence with the father of" one of her children. With

respect to the domestic violence, McVea was asked whether Vanessa A. indicated where her children were at the time when those domestic violence incidents occurred. McVea replied, "I know that there were times where her youngest child was in the vehicle while her abuser was standing outside the vehicle [and Vanessa A. was] standing outside the vehicle."

Erinna Rios, an investigator with the Department, testified the children were removed in March 2022 from Vanessa A.'s care because of allegations of neglectful supervision and possible use of methamphetamine. When Rios questioned Vanessa A. at the time the children were removed, Vanessa A. admitted that she had relapsed the day before by using illegal substances.

Raymundo Molina, a conservatorship worker, testified about Vanessa A.'s pattern of completing inpatient drug treatment, relapsing during outpatient treatments, and then being placed back into inpatient drug treatment. He referred Vanessa A. to outpatient drug treatment in August 2022. She was discharged from treatment on November 1, 2022. Molina testified he asked Vanessa A. to drug test on November 29, 2022, and she was positive for methamphetamines. Vanessa A. then entered inpatient treatment in December 2022 and did not have any positive drug tests during inpatient treatment. When she completed inpatient treatment in March 2023, she was referred back to Alpha Home for outpatient treatment. However, she "was discharged unsuccessfully" "in May of 2023." Alpha Home recommended inpatient treatment for Vanessa A. but she declined. In July 2023, Molina referred Vanessa A. to outpatient treatment with Lifetime in July 2023. Molina testified that he had talked to Vanessa A. about going back to inpatient treatment but "she just stated that she—that's not something that she was interested in." Molina explained that all these additional referrals were required because although she completed inpatient treatment, she relapsed again once inpatient treatment had been completed. Molina testified that while Vanessa A. completed many of her services, she did not successfully achieve the goals of her service plan and had not addressed the issues that had brought the children into the Department's care. Molina

explained that if the children were returned, he was concerned about Vanessa A. continuing to use illegal substances. He testified that Vanessa A. was not employed and had not provided any documentation of employment or financial stability. He also testified that while this case was pending, Vanessa A. had been placed on probation for a criminal offense. Molina further testified that after removal from Vanessa A.'s care, the oldest child, twelve-year-old J.A.B., wanted to be placed by herself, and not with her siblings, because she wanted a break from being her siblings' caregiver. J.A.B. has been placed in a foster home alone. Molina testified that J.A.B. "was very shut down" in the beginning of this case but is now "more verbal and more expressive" since being in foster care.

Lorie Wong, an outpatient counselor at Alpha Home, testified that Vanessa A. was admitted for outpatient treatment on March 13, 2022. However, because Vanessa A. had three positive drug tests for methamphetamines in one month, she was discharged in May 2022 with a referral to residential inpatient treatment. Wong explained that Vanessa A. was unable to remain sober during outpatient treatment.

Vanessa A. testified that she was unemployed. She admitted to a history of domestic violence, including being arrested for assault and being placed on probation. Vanessa A. testified that she had assaulted the former girlfriend of her one-year-old daughter's father.[3] When asked about her illegal drug use, Vanessa A. testified that she gets her illegal substances from "a drug dealer" and claimed that all her drugs were free. At trial, she admitted to seeing her drug dealer the previous month. She explained the illegal drugs helped her "focus" and gave her a "boost." Vanessa A. was asked whether she would allow a babysitter whom she knew was using illegal drugs to care for her children. Vanessa A. replied, "No."

---

[3]Vanessa A.'s parental rights to this daughter have not been terminated.

Given Vanessa A.'s pattern of illegal drug abuse and domestic violence, of which there was evidence both before and after removal, we hold the evidence was legally and factually sufficient to support the trial court's findings under subsections (D) and (E). *See In re J.T.G.*, 121 S.W.3d at 125.

### C. Best Interest of the Children

Vanessa A. also argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(2); *In re J.O.A.*, 283 S.W.3d at 344 (explaining legal and factual sufficiency standard). There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307. *See* TEX. FAM. CODE § 263.307(b).[4] In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[5] The *Holley* factors are neither all-

---

[4]These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[5]These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental

encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see In re E.A.R.*, 672 S.W.3d 716, 722 (Tex. App.—San Antonio 2023, pet. denied) (noting that a best-interest finding does not require proof of any particular factor). "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re E.A.R.*, 672 S.W.3d at 722 (quoting *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied)). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.A.R.*, 672 S.W.3d at 722; *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for termination may also be probative of best interest. *In re C.H.*, 89 S.W.3d at 28; *In re E.A.R.*, 672 S.W.3d at 722.

In support of her argument that the evidence is legally and factually insufficient to support the trial court's best-interest finding, Vanessa A. points to the following evidence:

- Molina's testimony that there were positive interactions between her and the children and that she was bonded with the children;
- McVea's testimony that the children were bonded with Vanessa A.;
- Vanessa A.'s testimony that her oldest child said she wanted to come home;
- Molina's testimony that the children had been placed in two different foster homes, they were doing well and in therapy, and their placements were non-adoptive foster homes;
- The caseworker's testimony that the children were doing well;
- Molina's testimony that Vanessa A. had stable housing;
- Testimony that Vanessa A. completed domestic violence classes and anger management classes, and was in therapy with McVea;
- McVea's testimony that she was active in sessions and motivated towards sobriety.

---

abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

This record is clear that Vanessa A. is bonded with her children. However, this record is also clear that Vanessa A. has a pattern of substance abuse and domestic violence. The testimony in this case was consistent that Vanessa A. is not able to care for her children because of her ongoing substance abuse and domestic violence issues. While she has stable housing, she does not have employment. The testimony in this case was also consistent that Vanessa A. has not addressed the issues that brought her children into the Department's care. There was also evidence that the children are doing well in their current placements and their needs are being met. Molina testified the children have been under the conservatorship of the Department for almost a year and a half. According to Molina, twelve-year-old J.A.B. has improved in foster care. J.L.B. and J.B. have been placed together in a foster home, and all three children were in therapy and "positive progress had been reported." In looking at all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that the termination of Vanessa A.'s parental rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344. Thus, we hold the evidence is legally sufficient to support the trial court's best-interest finding. While Vanessa A. points to her housing and the bond she has with the children, a rational trier of fact could have looked to evidence of Vanessa A.'s pattern of drug abuse and domestic violence, and determined termination of her rights was in the best interest of the children. *See id*. at 345. Therefore, we also hold the evidence is factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

For the reasons stated above, we affirm the trial court's order terminating Vanessa A.'s parental rights.

Liza A. Rodriguez, Justice

- 12 -