

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00103-CV

**IN THE INTEREST OF J.N.R.**, L.A.A.M.,
K.E.M., and K.J-A.M., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01190
Honorable Brenda Chapman, Judge Presiding

Opinion by:    Velia J. Meza, Justice

Sitting:    Irene Rios, Justice
Lori I. Valenzuela, Justice
Velia J. Meza, Justice

Delivered and Filed: August 6, 2025

AFFIRMED

Mother appeals termination of her parental rights to four children, J.N.R., L.A.A.M., K.E.M., and K.J-A.M.[1] The Texas Department of Family and Protective Services (the Department) filed a petition on August 4, 2023 for temporary managing conservatorship and to terminate parental rights. After a two-day bench trial, the trial court signed an order terminating Mother's rights and appointing the Department as permanent managing conservator of each child. The order includes statutory predicate findings under (E), (O) and finds that termination of Mother's parental

---

[1] To protect the identity of the children and persons through whom the children could be identified, we will refer to appellant as "Mother" and to the children by initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8. Because there are two presumed fathers, we will use initials to refer to each when relevant.

rights is in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(1)(E), (b)(1)(O), (b)(2).

On appeal, Mother challenges the sufficiency of the evidence supporting the termination findings. We affirm.

## BACKGROUND

The Department initiated this case in May 2023, after receiving a report that Mother was smoking marijuana inside her home. Two weeks later, a second referral alleged that Mother had hit her two-year-old son, K.E.M., who was found dirty and unclothed. Another two weeks after that, the Department received a third referral regarding the condition of the home.

Upon investigating, Department staff found the home in deplorable condition: rotting trash, dirty diapers, numerous flies, and no food in the refrigerator. Mother resided there with C.E.M. and her four children—J.N.R. (age eight at the time of trial), L.A.A.M. (five), K.E.M. (three), and K.J-A.M. (two). C.E.M. is the father of the three younger children.[2]

Investigators consistently observed the children in soiled diapers and appearing neglected. On one occasion, L.A.A.M. had urinated in her pants and Mother made no effort to change her. On another, J.N.R. had an unexplained burn on the back of her leg, with neither Mother nor C.E.M. able to account for the injury.

Early in the investigation, C.E.M. tested positive for methamphetamine, prompting Mother to agree to a safety plan whereby she would take the children to stay with relatives and limit C.E.M.'s contact. The safety plan also required her to supervise the children, yet Mother left the children unsupervised for extended periods, and she eventually tested positive for methamphetamine herself.

---

[2] J.N.R.'s father was convicted of raping a child in 2010 and is a registered sex offender. His rights were terminated in this proceeding.

Upon discovery of Mother's drug use, the Department obtained a court order to remove all four children. Before service of the removal order, Mother moved back in with C.E.M. When Department staff arrived to serve the removal order, Mother reported that C.E.M. had been arrested for assaulting her.

As a result of the circumstances leading to removal, Mother was ordered to complete various services and maintain a stable living environment. While initially resistant to therapy, by the time of trial, she had completed nearly all of her court-ordered service plan. Mother began individual counseling, secured employment two months before trial, and tested negative for illegal substances throughout the case.

Mother lived with C.E.M. for most of the case. In October 2024, an incident occurred in which Mother attacked C.E.M. with a frying pan, which prompted the Department to require her participation in domestic violence intervention services. Mother completed those services during the trial. After the incident with C.E.M., Mother moved in with her sister's family in a mobile home. Mother conceded this was not a viable placement for her children due to lack of space.

After removal, the children were then placed in foster care. At trial, J.N.R. and L.A.A.M. were living with a foster family in Houston, while K.E.M. and K.J-A.M. resided in Bryan, Texas. The Department's permanency plan was relative adoption, with two candidates identified—each intending to adopt all four children, and home studies ongoing.

The children spent six months placed with one of the adoption candidates during the case. This placement ended when Mother made false allegations of sexual abuse and arrived at the placement unannounced, necessitating the children's move to another foster home. Mother admitted the allegations were untrue but insisted she acted on credible rumors from a coworker.

Department witnesses described Mother's visitation as "chaotic": she frequently arrived late and encouraged the children to use foul language and be disrespectful to staff. Mother denied encouraging misbehavior and saw no issues with her conduct during visitation. Nevertheless, these issues contributed to two foster placement breakdowns. A foster mother testified that K.E.M. and K.J-A.M. demonstrated disruptive behaviors at home and school; when she tried to address these concerns with Mother during virtual visits, Mother laughed and dismissed the issues.

Following a two-day bench trial, the court terminated Mother's parental rights to all four children.

## ANALYSIS

### 1    Sufficiency of the Evidence

A suit involving the potential termination of a parent's right to a child is of constitutional import. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (citations omitted). But a parent's rights "are not absolute." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

When reviewing the evidence in a parental termination case, we apply the well-established standards associated with both a legal and factual sufficiency review. *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied) (internal quotation omitted) (citation omitted).

First, in a legal sufficiency review, we "view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated its credibility, and dealt the closest with the evidence at hand." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 (Tex. 2021)) (internal quotation omitted). We will not substitute our own judgment for that of the factfinder. Instead, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). And, in terms of evidentiary weight and witness credibility, we will "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)) (internal quotation marks omitted).

In our review, we "must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). While we will disregard all evidence contrary to a factfinder's determination if "a reasonable factfinder could have disbelieved or found it to have been incredible," we will not disregard undisputed evidence even if it does not support the trial court's finding. *Id.*; *In re C.E.,* 687 S.W.3d 304, 308 (Tex. 2024).

In our factual sufficiency review, we consider the entire record and determine whether, considering the entire record, any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266.

**1.1    Endangerment**

In her first issue, Mother challenges the sufficiency of the evidence supporting the trial court's finding under subsection (E).

To terminate under subsection (E), the Department must prove by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Conduct includes "a parent's acts, omissions, or failures to act." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (mem. op.). And "endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *Id*. at *3 (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). While termination under subsection (E) must be based on a "voluntary, deliberate, and conscious course of conduct," courts may consider conduct both before and after the Department removed the child from the home. *Id*. (internal quotations and citations omitted).

But the statute does not require that endangering conduct be directed at a child or that the actual injury result. *C.E.*, 687 S.W.3d at 310.  "Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone." *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.) (citation omitted).

Mother argues that the evidence presented at trial was legally and factually insufficient to support termination under subsection (E) because there was no evidence C.E.M.'s drug use affected the children and, after an initial positive result showing methamphetamine use, Mother never again tested positive. We disagree.

### 1.1.1 Evidence Presented at Trial

At the time of the children's removal, they lived with Mother and C.E.M. in San Antonio. Department investigator Tidelle Jasso testified that Mother consistently refused Department entry into the home, and when the front door was opened, a strong foul odor, flies, dirty diapers, spoiled milk, and trash were immediately apparent, causing her eyes to become irritated. C.E.M. attributed the smell to a bug infestation but prevented further inspection. On her only entry, Ms. Jasso saw vomit on the stairs and noted that Mother allowed a child to remain in urine-soaked clothing. The children appeared disheveled and dirty in every interaction the Department had with the family.

Both Mother and C.E.M. tested positive for methamphetamine during the investigation. Mother denied methamphetamine use but admitted to smoking marijuana outside while the children slept. And C.E.M. only claimed he used ecstasy once.

Department caseworker Tory Lucas testified that Mother reported non-specific domestic violence. C.E.M. denied being abusive, instead accusing Mother of aggression, including an incident with a charging cable and another with a frying pan.

Mother's progress with services was inconsistent. While initially described as "aggressive" and "hostile," she eventually completed most court-ordered programs, including counseling and substance abuse assessments, and found employment two months before trial. However, Mother resisted domestic violence classes and therapy, deeming them unnecessary.

At trial, Mother was residing with her sister in a mobile home and acknowledged that it was not safe or adequate for all four children. The sister had a criminal history, including prior child abuse charges.[3]

---

[3] Ms. Tellez was unable to run a background check on the sister's boyfriend because the sister refused to provide identifying information.

Mother exhibited ongoing issues during supervised visitation: lateness, inability to control the children, encouragement of inappropriate behavior, and attempted corporal punishment. These behaviors contributed to foster placement breakdowns and chaotic visits.

Despite participating in services, Mother did not remedy the concerns that led to removal and continued to display aggression, while her living situation remained unstable.

### 1.1.2 Analysis

The appropriate standard of review requires us, in a legal sufficiency review, to view all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *C.E.*, 687 S.W.3d at 309.

Evidence of domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment under subsection (E). *In re K-A.B.M.*, 551 S.W.3d 275, 286 (Tex. App.—El Paso 2018, no pet.). Evidence of illegal drug use by a parent and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsection (E). *K.J.G.*, 2019 WL 3937278, at *5 ("Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."); *see also In re K-A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E).").

Here, the uncontroverted evidence establishes that Mother used methamphetamine and marijuana and that she engaged in domestic violence. In addition, Mother did not maintain a home that was safe or stable for her children. *See In re M.A.A.*, No. 01-20-00709-CV, 2021 WL 1134308, at *17 (Tex. App.—Houston [1st Dist.] Mar. 25, 2021, no pet.) (mem. op.) ("[P]arental neglect

can be as dangerous to the children's well-being as direct abuse and neglecting the children's physical condition constitutes endangerment.").

We hold the evidence is legally sufficient to support the trial court's endangerment finding under subsection (E). We also hold that the contrary disputed evidence is not "so significant that a factfinder could not reasonably have formed a firm belief or conviction," and thus the evidence is factually sufficient. *See J.F.C.*, 96 S.W.3d at 266.

### 1.1.3 Conclusion

Only one predicate finding is necessary to support a judgment of termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Because termination under subsections (D) or (E) may have implications for a parent's parental rights to other children, appellate courts are instructed to address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019); *see also* TEX. FAM. CODE § 161.001(b)(1)(M) (allowing termination based upon certain time-limited findings under subsections (D) or (E)).

Because we find sufficient evidence supporting the trial court's findings as to subsection (E), we need not address the evidence supporting subsection (O). Mother's first and second appellate issues are overruled.

### 1.2 Best Interest

Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest.

"[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE § 153.131(b)). And because of the strong presumption in favor of maintaining the parent-child relationship and the due process implications of terminating a parent's rights to her minor

children without clear and convincing evidence, "the best interest standard does not permit termination merely because a child might be better off living elsewhere." *In re J.G.S.,* 574 S.W.3d 101, 121–22 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (internal quotations omitted); *see In re W.C.,* 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.). Termination of parental rights should not be used as a mechanism to merely reallocate a child to better and more prosperous parents. *Id.*

In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307(b). *See* TEX. FAM. CODE § 263.307(b). In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d at 27; s*ee In re E.A.R.*, 672 S.W.3d 716, 722 (Tex. App.—San Antonio 2023, pet denied) (noting that a best interest finding does not require proof of any particular factor). "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re E.A.R.*, 672 S.W.3d at 722 (quoting *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied)). However, the presence of scant evidence relevant to each factor will generally not support a finding that termination of parental rights was in the child's best interest. *In re R.H.*, No. 02-19-00273-CV, 2019 WL 6767804, at *4 (Tex. App.—Fort Worth Dec. 12, 2019, pet. denied) (mem. op.); *In re A.W.,* 444 S.W.3d 690, 693 (Tex. App.—Dallas 2014, pet. denied).

Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.A.R.*, 672 S.W.3d at 722 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). The predicate grounds for termination may also be probative of best interest. *Id.* (citing *In re C.H.*, 89 S.W.3d at 28). In parental-termination proceedings, the Department's burden is not simply to prove that a parent should not have custody of her children; the Department must meet the heightened burden to prove, by clear and convincing evidence, that the parent should no longer have any relationship with her children whatsoever. *See In re K.N.J.,* 583 S.W.3d 813, 827 (Tex. App.—San Antonio 2019, no pet.); *see also In re J.A.J.,* 243 S.W.3d 611, 616–17 (Tex. 2007) (distinguishing conservatorship from termination).

### 1.2.1 Holley factors

We begin by detailing evidence relevant to each *Holley* factor.

**Present and Future Physical and Emotional Needs.** The trial court heard evidence that Mother placed a heavy burden on J.N.R. to care for her younger siblings. J.N.R. exhibited these "parentification" behaviors while in foster care. K.E.M. and K.J-A.M. exhibited disruptive behaviors at school and at home. *See N.M. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-23-00440-CV, 2023 WL 7169577, at *5 (Tex. App.—Austin Nov. 1, 2023, no pet.) (mem. op.) (considering evidence of parentification and disruptive behaviors in best interest analysis).

**Desires of the Children.** There was no direct evidence adduced at trial regarding the children's wishes. However, the children were young and the fact finder could have considered the children's stability in foster care and that the youngest children spent minimal time with Mother. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**Emotional and Physical Danger to the Children Now and in the Future.** Evidence of endangerment is especially relevant to whether termination of a parent's rights is in a child's best interest. *In re A.J.A.D.*, No. 01-22-00521-CV, 2022 WL 17813763, at *11 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, pet. denied) (mem. op.). We have already found sufficient evidence of endangerment under subsection (E), based on Mother's drug use, domestic violence, and neglect of the children. While there was evidence Mother used drugs at the start of the case, there was no evidence Mother continued to use drugs after her children were removed. However, Mother continued to engage in domestic violence by assaulting one of the fathers of her children with a frying pan.

**Parental Abilities and Programs Available.** Department staff described Mother as resistant to instruction and services. Mother eventually engaged in—and completed—nearly every service assigned to her. However, Mother continued to engage in questionable parenting behavior. When she visited the children, she would arrive late and encourage the children to "say bad words" and "be rude to staff." These behaviors caused foster placements to breakdown twice. Mother was unable to control the children and even attempted to spank the children on two different visits. When staff attempted to address the behavior with Mother during virtual visitation, Mother would laugh and not take the concerns seriously. At trial, Mother denied encouraging the children's bad behavior and saw no issue with her visitation.

This evidence indicates Mother cannot provide appropriate guidance, structure, or discipline needed for healthy growth. *See In re A.J.B.*, No. 10-18-00274-CV, 2018 WL 6684808, at *3 (Tex. App.—Waco Dec. 19, 2018, no pet.) (mem. op.) ("[Y]oung children are particularly vulnerable if left in the custody of a [caregiver] who is unable or unwilling to protect them or attend to their needs because they have no ability to protect themselves."); *In re S.B.*, 207 S.W.3d

877, 886 (Tex. App.–Fort Worth 2006, no pet.) (parent's poor judgment is relevant to best interest determination); *In re C.M.W.*, No. 01-02-00474-CV, 2003 WL 579794, at *5 (Tex. App.— Houston [1st Dist.] Feb. 27, 2003, no pet.) (mem. op.) (children's basic needs include appropriate supervision).

**Stability of the Home or Proposed Placement and Plans for the Children.** Mother wants the children back and works at a restaurant. At the time of trial, Mother lived in a mobile home with her sister. Department staff testified that this sister has a criminal history including a felony charge relating to child abuse. Mother acknowledged the home was not a viable placement for the children. Mother intends to move into an apartment and maintain a job. Mother was on the waitlist for an apartment previously but ultimately failed to qualify. Mother was removed from the waitlist because she applied for housing that could accommodate the children. When the housing authority discovered she no longer had custody of her children, she was removed from the list. Ms. Tellez testified that Mother could have applied for housing without children, but did not do so.

Mother admitted to mutual domestic violence between her and C.E.M. and acknowledged that he is not an appropriate caregiver due to his drug use. Mother has not interacted with C.E.M. since attacking him with a frying pan. Importantly, Mother did not test positive for drugs after the positive result that led to removal.

On the other side, the Department proposed relative adoption with two potential candidates. Home studies were in-progress and both candidates intended to adopt all four children. The children lived with one of the candidates for six months during the case. This placement broke down when Mother made false reports of sexual abuse and showed up to the placement

unannounced, causing the children to be moved to a different foster home. Mother acknowledged the reports were untrue but testified that she made the reports based on rumors she heard from a third party.

### 1.2.2 Conclusion

We "must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. Considering the continued domestic violence and instability, combined with Mother's demonstrated inability to change many of her violent tendencies during the case, the trial court could have reasonably formed a firm belief or conviction that termination of her parental rights was in the children's best interest. We similarly conclude that the disputed evidence is not so significant that the trial court could not have formed a firm belief or conviction that termination was in the children's best interest. *In re J.F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally and factually sufficient to support the trial court's best interest finding. *See In re J.O.A.*, 283 S.W.3d at 344-45.

We overrule Mother's third issue.

### CONCLUSION

Having concluded the evidence is legally and factually sufficient to support the findings challenged on appeal, we affirm the order of the trial court terminating Mother's parental rights.

Velia J. Meza, Justice